# Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO.  1984CV02924H

HIGH YIELD REO LLC _____ , PLAINTIFF(S),

v.

CERTAIN UNDERWRITERS _____ , DEFENDANT(S)
AT LLOYD'S LONDON

### SUMMONS

London

THIS SUMMONS IS DIRECTED TO  Certain Underwriters at Lloyds. (Defendant's name)

You are being sued.  The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior   Court. YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.

1. You must respond to this lawsuit in writing within 20 days. If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. If you need more time to respond, you may request an extension of time in writing from the Court.

2. How to Respond.  To respond to this lawsuit, you must file a written response with the court and mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
   a. Filing your signed original response with the Clerk's Office for Civil Business, Suffolk Superior, 3 Pemberton Sq., Boston (address), by mail or in person, AND MA 02108
   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: Christopher M., Reilly, Sloane and Walsh, One Center Plaza, Boston, MA 02108

3. What to include in your response. An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as counterclaims) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.   Legal Assistance. You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.   Required information on all filings: The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on __September 17,__ , 20 _19_ .

Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on_____, 20____, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20____         Signature: _____

N.B.   TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>1984 CV 02924 H | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| | | COUNTY |
|---|---|---|
| **PLAINTIFF(S):** | High Yield REO, LLC | Suffolk |
| **ADDRESS:** | 404 South Huntington Avenue, Boston, MA 02130 | |
| | | **DEFENDANT(S):** Certain Underwriters at Lloyd's London |
| **ATTORNEY:** | Christopher M. Reilly, Esq. | |
| **ADDRESS:** | Sloane and Walsh LLP, One Center Plaza, Boston, MA 02108 | **ADDRESS:** 25 West 53rd Street, New York, NY |
| **BBO:** | 674041 | |

**TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A99/D99 | Insurance/G.L. c.93A | F | [x] YES   [ ] NO |

**\*If "Other" please describe:**

Is there a claim under G.L. c. 93A?
[x] YES   [ ] NO

Is this a class action under Mass. R. Civ. P. 23?
[ ] YES   [x] NO

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ........................................................................................... $_____
    2. Total doctor expenses ............................................................................................ $_____
    3. Total chiropractic expenses ................................................................................... $_____
    4. Total physical therapy expenses ........................................................................... $_____
    5. Total other expenses (describe below) ................................................................. $_____
                                            Subtotal (A): $_____

B. Documented lost wages and compensation to date ..................................................... $_____
C. Documented property damages to date ....................................................................... $_____
D. Reasonably anticipated future medical and hospital expenses .................................... $_____
E. Reasonably anticipated lost wages ............................................................................. $_____
F. Other documented items of damages (describe below) .................................................

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                    TOTAL (A-F):$_____

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

Provide a detailed description of claim(s):

Defendant has failed to pay for a covered loss under an insurance policy it issued to Plaintiff.

                                              **TOTAL:** $ 360,000+

**Signature of Attorney/ Unrepresented Plaintiff: X**           Date: Sep 16, 2019

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record: X** _____    Date: 9/16/19

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality ***

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

**CN Contract/Business Cases**

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M R C P 8 1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c. 231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

**PA Civil Actions Involving Incarcerated Party †**

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

**TR Torts**

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

**RP Summary Process (Real Property)**

| | |
|---|---|
| S01 Summary Process - Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

**RP Real Property**

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

**MC Miscellaneous Civil Actions**

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10, § 28 | (X) |

**AB Abuse/Harassment Prevention**

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

**AA Administrative Civil Actions**

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 Appeal Bond Denial | (X) |

**SO Sex Offender Review**

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

**RC Restricted Civil Actions**

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112, § 12S | (X) |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | _F_ | [x] YES   [ ] NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
### FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY MAY RESULT IN DISMISSAL OF THIS ACTION.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    SUPERIOR COURT
                                                Civil Action No.:

High Yield REO, LLC          )
        Plaintiff            )
                             )
        v.                   )
                             )
                             )
Certain Underwriters at Lloyd's London )
        Defendant            )
                             )

## COMPLAINT AND JURY DEMAND

### PARTIES

1.      The plaintiff, High Yield REO, LLC, (hereinafter "High Yield"), is a limited liability company with a principal place of business at 404 South Huntington Avenue, Boston, MA 02130.

2.      High Yield is domiciled in Massachusetts.

3.      Defendant Certain Underwriters at Lloyd's, London ("Lloyd's") is a duly organized insurance company licensed and authorized to conduct business in the writing of fire and allied lines of insurance coverage within the Commonwealth of Massachusetts.

4.      Lloyd's conducts business in Suffolk County, Massachusetts.

5.      Lloyd's has a principal place of business in the State of New York at 25 West 53rd Street, New York, New York.

### JURISDICTION

6.      Jurisdiction over the defendant, Lloyd's, is proper because Lloyd's transacted business in the Commonwealth of Massachusetts, contracted to supply insurance in the Commonwealth of Massachusetts, and regularly does or solicits business, engages in other persistent courses of conduct, and derives substantial revenue from goods used or consumed or services rendered, in the Commonwealth of Massachusetts.

1

7.     This court has jurisdiction over this matter and may enter a declaration of rights and responsibilities of the parties pursuant to G.L. c. 231A.

8.     An actual controversy of a justiciable nature exists among the parties involving the rights and obligations of the parties pursuant to an insurance policy.

## VENUE

9.     Venue is appropriate in Suffolk County because Defendant Lloyd's has a usual place of business in Suffolk County and conducts business in Suffolk County.

## GENERAL ALLEGATIONS

10.    Lloyd's issued an insurance policy to High Yield, policy number ATR/R/455483.01, with effective dates of April 13, 2018 to October 13, 2018 (the "Policy"). See Policy attached as Exhibit A.

11.    The Policy was negotiated in Massachusetts by and through Lloyd's Retail Broker, E.M. Freedman Insurance, 20 Scanlon Dr., Randolph, MA 02368.

12.    The Policy provided insurance to High Yield for property located at 108 East Lake Street, Winstead, CT 06908 (the "Property").

13.    At the time the Policy was entered into the Property was vacant.

14.    At the time the Policy was entered into the Lloyd's was aware that the Property was vacant.

15.    In light of the fact that the Property was vacant, High Yield requested that Lloyd's provide it with an insurance policy to fully insure it for the risks associated with ownership of a vacant property, including but not limited to vandalism, attempted theft, and theft.

16.    Lloyd's represented to High Yield that it was providing High Yield with the coverage it sought to provide coverage to the Property in its vacant state.

17.    High Yield, in reliance on Lloyd's representations, paid significantly higher premiums to obtain the Policy, which Lloyd's represented would provide coverage to High Yield for the Property in its vacant condition.

18.    On or around April 20, 2018, and April 27, 2018, the building was broken into.

2

19.     The people who broke into the Property vandalized the property, committed attempted burglary/theft, and committed burglary/theft.

20.     All such damage was covered by the Policy, although the theft losses were limited to $25,000 per occurrence by the Policy's language.

21.     As a result of these covered causes of loss, ensuing water damage occurred to the Property, which was also covered by the Policy.

22.     High Yield timely reported the loss.

23.     High Yield provided Lloyd's with a detailed repair estimate which stated High Yield's position as to the value of this loss and explained to Lloyd's why these losses were covered under the Policy.

24.     Lloyd's disagreed with High Yield's valuation of the loss by way of neither confirming nor denying coverage or the amount of loss.

25.     Months went by and Lloyd's made no coverage determination.

26.     Lloyd's retained third parties to investigate the loss.

27.     On August 9, 2018, the Property was inspected by Lloyd's and a third party who was retained to serve on behalf of Lloyd's as a roof inspector.

28.     Three more months went by after this inspection and no coverage determination was made by Lloyd's.

29.     High Yield was compelled to retain counsel to represent its interests.

30.     On November 13, 2018, High Yield demanded appraisal. See Appraisal Demand attached as Exhibit B.

31.     Under the terms of the Policy, Lloyd's was required to respond to this demand for appraisal within ten days of the demand.

32.     The deadline for Lloyd's to respond to the Appraisal Demand passed with no response from Lloyd's.

33.     On November 29, 2018, Lloyd's responded to High Yield's counsel and indicated that Lloyd's was "formulating [its] response to the request for appraisal."

34.     Lloyd's has never responded to High Yield's appraisal demand.

3

35.     As of November 21, 2018, Lloyd's was aware that coverage, including coverage under the Theft endorsement, existed for the loss.

36.     Notwithstanding that coverage was owed under the terms of the Policy, on November 11, 2018, Lloyd's attempted to obtain a release for money owed to High Yield under the Policy.

37.     Specifically, Lloyd's wrote to High Yield and stated that it was "offering to settle these matters for the $25,000 per-limit occurrence for Theft damage that occurred on both April, and April 27." See November 21, 2018 correspondence attached as Exhibit C.

38.     Lloyd's attempt to obtain a release for money that was undisputedly owed under the Policy constitutes bad faith.

39.     On December 20, 2018, High Yield wrote to Lloyd's and noted that Lloyd's had never responded to the appraisal demand. Additionally, High Yield asked Lloyd's to confirm whether it had accepted coverage for the Theft damages, and if so to issue payment to High Yield.

40.     Lloyd's did not respond to this correspondence.

41.     Months passed, until on March 8, 2019 – nearly a year after the loss – Lloyd's noticed the examination under oath of High Yield.

42.     At no time prior to this March 8, 2019 notice of examination under oath did Lloyd's reserve any of its rights under the Policy.

43.     High Yield complied with Lloyd's examination under oath notice and appeared for its examination on May 9, 2019.

44.     Over two months passed after the examination under oath, until, on July 16, 2019, Lloyd's wrote to High Yield and confirmed what that coverage was owed for the two theft damages up to the limit of $25,000 for each claim, but otherwise denied the claim in its entirety. See July 16, 2019, correspondence of Lloyd's ("Denial Letter") attached as Exhibit D.

45.     The Denial Letter was premised on mistakes of fact and law.

46.     By way of example, the Denial Letter claimed that Anthony Borghi, High Yield's examinee under oath, had never been to the property, despite the fact that he explicitly testified that he had been to the property.

4

47.   The Denial Letter denied the claim on the basis that damages to the building were the result of a "prior sprinkler pipe freeze-up loss in 2018" despite the fact that no such sprinkler freeze up loss had occurred.

48.   The Denial Letter stated that an exclusion in the Policy for "surface water" applied to bar coverage despite the fact that Connecticut law has explicitly rejected this argument. See Union St. Furniture & Carpet, Inc. v. Peerless Indem. Ins. Co., 2012 WL 5519614, at *4 (Conn. Super. Ct. Oct. 23, 2012) ("Mindful of the well accepted rules of interpretation of insurance contracts, the court rejects the strained interpretation of surface water offered by Peerless, and concludes that the phrase 'surface water' as it occurs in the Peerless policy does not include water collected on a roof.").

49.   The Denial Letter ignored the ensuing loss provision of the faulty workmanship exclusion.

50.   On August 21, 2019 High Yield wrote to Lloyd's, explained the errors in its Denial Letter, and demanded that Lloyd's rescind its coverage denial and provide coverage for the loss within 14 days. See High Yield Response letter attached as Exhibit E.

51.   Lloyd's has not responded to this correspondence, rescinded its coverage denial, or agreed to provide coverage for the loss.

## COUNT I
### (Declaratory Judgment)

52.   Plaintiff repeats and incorporates herein by reference Paragraphs 1 through 51 above as if fully set forth herein.

53.   The Policy provided coverage for the Claim.

54.   Pursuant to the terms of the Policy and the law of Connecticut, High Yield demanded appraisal.

55.   Lloyd's refused to respond to this demand for appraisal.

56.   Lloyd's has therefore breached the terms of the Policy.

57.   As a result of Lloyd's refusal to respond to High Yield's appraisal demand, it has waived the right to challenge High Yield's valuation of the loss as set forth in its detailed repair estimate provided by High Yield to Lloyd's.

58.   Plaintiff and Defendant entered into a contract, to wit the Policy.

5

59.     The Policy provided coverage for the above described claims.

60.     Lloyd's has refused to accept coverage for the claims in their entirety, and instead has covered only a small portion of the claims.

61.     Under the terms of the Policy Lloyd's is required to provide coverage for the entirety of the claim submitted by Plaintiff.

62.     As such, an actual controversy exists within the meaning of G.L. c. 231A, which is appropriate for declaratory judgment by this Court.

WHEREFORE, Plaintiff prays that this Court declare that Lloyd's is obligated to coverage the Plaintiffs' loss under the terms of the Policy and to declare that Lloyd's has waived its right to challenge High Yield's valuation of the loss as set forth in the repair estimate provided by High Yield to Lloyd's.

## COUNT II
### (Breach of Contract)

63.     High Yield repeats and incorporates by reference herein paragraphs 1 through 62 above as if fully set forth herein.

64.     Plaintiff and Defendant entered into a contract, to wit the Policy.

65.     The Policy provided coverage for the above described claims.

66.     Lloyd's has refused to accept coverage for the claims in their entirety, and instead has covered only a small portion of the claims.

67.     Lloyd's refusal to provide coverage for the claims in their entirety is a breach of contract.

68.     As a result of Lloyd's refusal to comply with the terms of the Policy and the laws of Connecticut, High has sustained substantial damages.

WHEREFORE, Plaintiff prays that this Court declare that the Lloyd's is obligated to issue payment to High Yield in the full amount of set forth in the repair estimate attached provided by High Yield to Lloyd's, that Plaintiff recover its costs, and that the Court order such further relief as this Court deems just and appropriate.

6

**COUNT III**

(Breach of the Covenant of Good Faith and Fair Dealing)

69.     High Yield repeats and incorporates by reference the allegations contained in paragraphs 1 through 68 of this Complaint to the same extent as if fully set forth herein.

70.     Implied in every contract is a covenant of good faith and fair dealing between the parties.

71.     Lloyd's breached the implied covenant of good faith and fair dealing that was implied in the Policy because it, in bad faith, refused to provide coverage and to pay High Yield for damages covered under the terms of the Policy.

72.     Lloyd's actions were in bad faith as it acted with a dishonest purpose or sinister motive, as its actions were taken in direct contradiction of established case law, as well as with complete disregard for the demand of High Yield to invoke the appraisal clause of the Policy, despite its explicit awareness that it was obligated to respond

73.     As a direct and proximate result of Lloyd's breach of the implied covenant of good faith and fair dealing, High Yield has suffered and continues to suffer substantial losses as hereinbefore alleged.

WHEREFORE, High Yield demands that judgment be entered on its behalf against Lloyd's in the maximum amount allowed by law, plus interest, costs, and attorneys' fees and all other amounts which are recoverable by law.  Furthermore, High Yield demands judgment against Lloyd's in an amount that will adequately compensate him for its damages and losses, together with interest and costs.

**COUNT IV**

(G.L. c. 93A, §11)

74.     High Yield repeats and incorporates by reference herein paragraphs 1 through 73 above as if fully set forth herein.

75.     Mass. Gen. L. ch. 93A §11 states "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of section two may, as hereinafter provided, bring an action in the superior court, or in the housing court as provided in section three of chapter one hundred and eighty-five C, whether by way of original complaint, counterclaim, cross-claim or third-party action for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper."

7

76.    Lloyd's is engaged in trade or commerce.

77.    High Yield is a limited liability corporation that engages in trade or commerce in Massachusetts.

78.    Lloyd's actions and inaction constitute "unfair or deceptive act[s]" pursuant to G.L. c. 93A §11 and G.L. c. 176D, §3.

79.    Specifically, Lloyd's unfair and deceptive acts include, but are not limited to:

      a.  Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
      b.  Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
      c.  Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
      d.  Refusing to pay claims without conducting a reasonable investigation based upon all available information;
      e.  Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
      f.  Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;
      g.  Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured; and
      h.  Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

80.    High Yield has suffered a financial loss by virtue of Lloyd's violations of Mass, Gen. L. ch. 93A §11.

WHEREFORE, High Yield respectfully demand judgment be entered on its behalf against the Lloyd's in the maximum amount recoverable by law, plus interest, costs, and attorneys' fees, and all other amounts that are recoverable by law.

## COUNT V
### (Unfair and Deceptive Practices in Violation of the Connecticut Unfair Insurance Practices Act and the Connecticut Unfair Trade Practices Act)

81.    High Yield repeats and incorporates by reference herein paragraphs 1 through 80 above as if fully set forth herein.

8

1610111.1

82.     Lloyd's is an insurance company licensed and qualified to engage in the business of insurance within the State of Connecticut.

83.     Lloyd's issued a homeowners insurance policy to the plaintiffs that provided coverage for the loss that is the subject of this complaint.

84.     Lloyd's has knowledge of case law, including that Mercedes Zee Corp., LLC v. Seneca Ins. Co., Inc., 151 F. Supp. 3d 255 (2015) and Union St. Furniture & Carpet, Inc. v. Peerless Indem. Ins. Co., 2012 WL 5519614 (Conn. Super. Ct. Oct. 23, 2012) in which insurers were obligated to provide coverage to policyholders for claims of coverage nearly identical to High Yield's claim.

85.     Notwithstanding Lloyd's knowledge of this case law and its own policy provisions which provide coverage for High Yield's claim, Lloyd's has denied much of High Yield's claims and provided High Yield with a false and misleading reason for its denial of coverage.

86.     Lloyd's has failed to attempt in good faith to effectuate, prompt, fair and equitable settlement of claims in which liability has become reasonably clear as it has arbitrarily refused to pay a claim which a reasonable person would determine is covered by the Policy which it issued to High Yield.

87.     Defendant has been regularly engaged, as part of its general business practice, in refusing to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims similar to High Yield's.

88.     By failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear as part of its general business practice, the defendant has engaged in conduct proscribed by the Connecticut Unfair Insurance Practices Act. Conn. Gen. Stat., §38a-816(6)(F).

89.     By engaging in this conduct prohibited by the Connecticut Unfair Insurance Practices Act, the defendant has also violated the Connecticut Unfair Trade Practices Act. Conn Gen. State., §42-110, et seq.

90.     As a direct cause of the defendant's unfair and deceptive trade practices, the plaintiffs have suffered loss and damages including loss of moneys owed pursuant to their contract of insurance, as already set forth herein, as well as court costs and attorney's fees to bring suit to litigate their claim, along with loss of interest on funds due them under the Policy.

9

WHEREFORE, High Yield respectfully demand judgment be entered on its behalf against the Lloyd's in the maximum amount recoverable by law, plus interest, costs, and attorneys' fees, and all other amounts that are recoverable by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, High Yield, requests that this Honorable Court:

   a. Enter a judgment against Defendant on all counts of the Complaint declaring it legally and financially responsible for damages Plaintiff has sustained or incurred;

   b. Award Plaintiff compensatory, punitive, double, and/or treble damages;

   c. Award Plaintiff the cost of suit, including attorneys' and expert witnesses' fees;

   d. Award Plaintiff interest, including, but not limited to, pre-judgment interest; and

   e. Fashion such other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, High Yield REO LLC hereby demands a jury trial for all claims and issues so triable.

Respectfully Submitted,
High Yield REO, LLC
The Plaintiffs,
By Their Attorneys,

Christopher M. Reilly, BBO#674041
SLOANE AND WALSH, LLP
Three Center Plaza
Boston, MA 02108
(617) 523-6010
creilly@sloanewalsh.com

DATE: 9/16/19

10

1610111.1

# EXHIBIT A

1578133,1



# Lloyd's Certificate

This Insurance is effected with certain Underwriters at Lloyd's, London.

This Certificate is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators.

The Assured is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.
All inquiries regarding this Certificate should be addressed to the following Correspondent:
AmWINS Access Insurance Services
2 Rosenfeld Dr.
Hopedale, MA  01747

SLC-3 (USA) NMA2868 (24/08/00) Printed by the Corporation of Lloyd's.

## CERTIFICATE PROVISIONS

1. **Signature Required.** This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

2. **Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Underwriters at Lloyd's, London whose syndicate numbers can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

3. **Cancellation.** If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. **Service of Suit.** It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm or person named in item 7 of the attached Declaration Page, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.
The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.
Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

5. **Assignment.** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

6. **Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

7. **Short Rate Cancellation.** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

Short Rate Cancellation Table For Term of One Year.

| Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66 - 69 | 29% | 154 - 156 | 53% | 256 - 260 | 77% |
| 2 | 6 | 70 - 73 | 30 | 157 - 160 | 54 | 261 - 264 | 78 |
| 3 - 4 | 7 | 74 - 76 | 31 | 161 - 164 | 55 | 265 - 269 | 79 |
| 5 - 6 | 8 | 77 - 80 | 32 | 165 - 167 | 56 | 270 - 273 ( 9 mos ) | 80 |
| 7 - 8 | 9 | 81 - 83 | 33 | 168 - 171 | 57 | 274 - 278 | 81 |
| 9 - 10 | 10 | 84 - 87 | 34 | 172 - 175 | 58 | 279 - 282 | 82 |
| 11 - 12 | 11 | 88 - 91 ( 3 mos ) | 35 | 176 - 178 | 59 | 283 - 287 | 83 |
| 13 - 14 | 12 | 92 - 94 | 36 | 179 - 182 ( 6 mos ) | 60 | 288 - 291 | 84 |
| 15 - 16 | 13 | 95 - 98 | 37 | 183 - 187 | 61 | 292 - 296 | 85 |
| 17 - 18 | 14 | 99 - 102 | 38 | 188 - 191 | 62 | 297 - 301 | 86 |
| 19 - 20 | 15 | 103 - 105 | 39 | 192 - 196 | 63 | 302 - 305 ( 10 mos ) | 87 |
| 21 - 22 | 16 | 106 - 109 | 40 | 197 - 200 | 64 | 306 - 310 | 88 |
| 23 - 25 | 17 | 110 - 113 | 41 | 201 - 205 | 65 | 311 - 314 | 89 |
| 26 - 29 | 18 | 114 - 116 | 42 | 206 - 209 | 66 | 315 - 319 | 90 |
| 30 - 32 ( 1 mot ) | 19 | 117 - 120 | 43 | 210 - 214 ( 7 mos ) | 67 | 320 - 323 | 91 |
| 33 - 36 | 20 | 121 - 124 ( 4 mos ) | 44 | 215 - 218 | 68 | 324 - 328 | 92 |
| 37 - 40 | 21 | 125 - 127 | 45 | 219 - 223 | 69 | 329 - 332 | 93 |
| 41 - 43 | 22 | 128 - 131 | 46 | 224 - 228 | 70 | 333 - 337 ( 11 mos ) | 94 |
| 44 - 47 | 23 | 132 - 135 | 47 | 229 - 232 | 71 | 338 - 342 | 95 |
| 48 - 51 | 24 | 136 - 138 | 48 | 233 - 237 | 72 | 343 - 346 | 96 |
| 52 - 54 | 25 | 139 - 142 | 49 | 238 - 241 | 73 | 347 - 351 | 97 |
| 55 - 58 | 26 | 143 - 146 | 50 | 242 - 246 ( 8 mos ) | 74 | 352 - 355 | 98 |
| 59 - 62 ( 2 mos ) | 27 | 147 - 149 | 51 | 247 - 250 | 75 | 356 - 360 | 99 |
| 63 - 65 | 28 | 150 - 153 ( 5 mos ) | 52 | 251 - 255 | 76 | 361 - 365 ( 12 mos ) | 100 |

Rules applicable to insurance with terms less than or more than one year:

A. If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B. If insurance has been in force for more than one year:

1. Determine full annual premium as for insurance written for a term of one year.

2. Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.

3. Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

24/08/00
NMA2868

- 2 -

This Declaration Page is attached to and forms part of Certificate provisions(Form SLC-3 USA NMA 2868) 00000000000000

| Certificate Reference No: ATR/R/455483.01 | Authority Reference No: B123018AWI1099 |
|---|---|

| 1.Name of Insured: | High Yield REO, LLC | | |
|---|---|---|---|
| Mailing Address of Insured: | 404 South Huntington Ave. Jamaica Plain, MA 02130 | Insured Location: | 108 East Lake St. Winsted, CT 06098 |

| 2. Effective From: | 13 April 2018 | To: | 13 October 2018 | both days at 12:01 a.m. standard time |
|---|---|---|---|---|

3.Insurance to be effected with certain UNDERWRITERS AT LLOYD'S, LONDON 100%

4.Terms and Conditions
Please see attached for specific Policy limits, deductibles and coverages applicable to the certificate.

| COVERAGE | COVERAGE PROVIDED | PREMIUM |
|---|---|---|
| Property | Yes | $6,375.00 |
| Premises Liability | Yes | $275.00 |
| Additional Coverage | As Specified | |

| | | |
|---|---|---|
| | TOTAL PREMIUM | $6,650.00 |
| | Surplus Lines Tax | $266.00 |
| | Policy Fee | $75.00 |
| | Inspection Fee | $0.00 |

NOTICE
THIS IS A SURPLUS LINES POLICY AND IS
NOT PROTECTED BY THE CONNECTICUT
INSURANCE GUARANTY ASSOCIATION.

TOTAL DUE     $6,991.00

THIS POLICY IS SUBJECT TO CANCELLATION IF A SATISIFACTORY PHOTOGRAPH IS NOT RECEIVED WITHIN 30 DAYS OF BINDING.
IN ADDITION, WHERE BUILDING AND OTHER STRUCTURE VALUE COMBINED EXCEEDS $500,000, THIS POLICY IS SUBJECT TO
CANCELLATION IF A SATISFACTORY INSPECTION IS NOT RECEIVED WITHIN 30 DAYS OF BINDING

5. Retail Broker:     E.M. Freedman Insurance
20 Scanlon Dr.
Randolph, MA 02368

By:

Correspondent     Dated:09 April 2018

- 3 -

This Declaration Page is attached to and forms part of Certificate provisions (Form SLC-3 USA NMA2868)

| Certificate Reference No: ATR/R/455483.01 | Authority Reference No: B123018AWI1099 |
|---|---|

**Property:**

| | Limit(s) | Coverage | Premium |
|---|---|---|---|
| Coverage A – Dwelling (Subject 80% Coinsurance) | $1,500,000 | Special Form - ACV | |
| Coverage B – Other Structures | $0 | No | |
| Coverage C – Personal Property (ex-theft) | $0 | No | |
| Coverage D – Fair Rental Value | $0 | No | |
| Coverage E – Additional Living Expenses | $0 | No | |
| Coverage F – Other Coverages | As defined in endorsement ATR-71 | | |
| Coverage A Theft | $25,000 | Yes | |
| **Total Property** | | | **$6,375.00** |

**Premises Liability:**

| | Limit(s) | Coverage | Premium |
|---|---|---|---|
| Each Occurrence Limit | $1,000,000 | Yes | |
| Medical Payments Per Person/Aggregate Limit | $5,000/$5,000 | Yes | |
| **Total Liability** | | | **$275.00** |

**Additional Coverages:**

| | Limit(s) | Coverage | Premium |
|---|---|---|---|
| Vandalism & Malicious Mischief Included | | Yes | |
| Water Damage | Full limit | Yes | |
| Renovations | $0 | Description – N/A | |

**Deductibles:**

| | Limit(s) |
|---|---|
| Wind and Hail Deductible per occurrence | $2,500 |
| All Other Perils Deductible per occurrence | $2,500 |
| Coverage A Theft Deductible per occurrence | $2,500 |
| Water Damage Deductible per occurrence | $2,500 |

This Declaration Page is attached to and forms part of Certificate provisions (Form SLC-3 USA NMA2868)

| Certificate Reference No: ATR/R/455483.01 | Authority Reference No: B123018AWI1099 |
|---|---|

**Forms and Endorsements:**

Insurance Binder  - Dwelling Package (Special)
INVOICE New Policy
NMA2868 Lloyds Certificate (SLC-3 USA) - Dwelling Package
(Special)
CG 21 49 09 99 - Total Pollution Exclusion Endorsement
DL 01 06 06 97 - Special Provisions - Connecticut
DL 24 01 07 88  Personal Liability
DL 24 11 07 88  Premises Liability (Non-Owner occupied
Dwelling)
DL 24 16 07 88  No Coverage For Home Day Care Business
DL 25 06 03 06 - Special Provisions - Connecticut
DL 25 06 06 97 - Special Provisions - Connecticut
DP 00 03 12 02 - Dwelling Property 3 Special Form
DP 01 06 03 06 - Special Provisions - Connecticut
DP 04 76 12 02 Actual Cash Value Loss Settlement
ATR-1  Mold and Fungi Exclusion Clause - DP
ATR-6  Mold and Fungi Exclusion Clause - DL
ATR-8  Construction Operations Exclusion
ATR-19  Other Structures Coverage Endorsement (Vacant
Property)
ATR-21  Vacancy Permit - Dwelling Property (Special)
ATR-23  Vandalism or Malicious Mischief Endorsement -
Dwelling Property (Special)
ATR-30  Minimum Earned Premium Endorsement
ATR-34  Sprinkler Leakage Exclusion - Vacant Dwelling
Property (Special)
ATR-35 Schedule of Underwriters
ATR-68  Swimming Pool Limited Premises Liability Coverage
Endorsement
ATR-69  Amendatory Endorsement  Personal Liability
Coverage
ATR-71  Coverage F. (Other Coverages) Exclusion and
Limitation Endorsement
ATR-92 Pre Existing Damage Exclusion
ATR-111 Theft Amendatory Endorsement (Coverage A -
Dwelling)
ATR-112 Water Damage Amendatory Endorsement (Dwelling
Property - Special)
LSW 1001 Several Liability Notice
LSW 1135b - Lloyds Privacy Statement
NMA 1331  Cancellation Clause
NMA 2340  Seepage and Pollution and Contamination
(Combined Clause)
NMA2802  Electronic Date Recognition Exclusion (EDRE)
NMA 2920  Terrorism Exclusion Endorsement
NMA 2962  Biological or Chemical Materials Exclusion
LMA3100 Sanction Limitation and Exclusion Clause

Additional Insured (none if blank)

LSW 546 Total or Constructive Loss
NMA 464 War and Civil War Exclusion Clause
NMA 1191 Radioactive Contamination Exclusion Clause –
Physical Damage – Direct (U.S.A.)
ATR-11 Vacant Dwelling Liability Combination Endorsement:
Employment Related Practices Exclusion;
Lead Contamination Exclusion;
Punitive or Exemplary Damages, Fines or Penalties Exclusion;
Asbestos, Silica and Formaldehyde Exclusion;
Assault, Battery and Negligent Hiring/Supervision Exclusion;
Independent Contractors' Employees or Leased Workers
Exclusion;
Dog Exclusion.

Additional Other Interest Details
Mortgagee

Endeavor High Yield Mortgage, LLC, ISAOA/ATIMA, 404 South
Huntington Ave., Jamaica Plain, MA, 02130

**Service of Suit:**

Walker Wilcox Matousek LLP
One North Franklin Street, Suite 3200,
Chicago, IL 60606-3610

**In event of claim, please notify the following:**

Mclarens Young International
1200 Roosevelt Road, Suite 206, Glen Ellyn
Illinois, 60137
Phone: 630.409.1460, Fax:630-953-6049

## COMBINATION ENDORSEMENT – VACANT PROPERTY LIABILITY COVERAGE

THE FOLLOWING EXCLUSIONS MODIFY THE INSURANCE PROVIDED UNDER THE LIABILITY COVERAGE PART. THEY CHANGE THE POLICY. PLEASE READ THEM CAREFULLY.

## EXCLUSION – EMPLOYMENT RELATED PRACTICES

This insurance does not apply to "bodily injury" and/or "personal and advertising injury" arising out of any:

(1) Refusal to employ;
(2) Termination of employment;
(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions;
(4) Consequential "bodily injury", "personal and advertising injury" as a result of (1) through (3) above; or
(5) Allegations that any insured's acts, errors or omissions, whether negligent or otherwise, in connection with the supervision or control of employees, agents or representatives caused or contributed to any such "bodily injury" and/or "personal and advertising injury."

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

## EXCLUSION - LEAD CONTAMINATION

This insurance does not apply to:

(1) "Bodily injury", "property damage", "personal and advertising injury" or "medical payments" arising out of the ingestion, inhalation or absorption of lead in any form;
(2) Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or
(3) Any loss, cost or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

## EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES, FINES OR PENALTIES

This insurance does not apply to any claim, or provide any indemnity, for punitive or exemplary damages, fines or penalties of any kind whatsoever.  If a suit seeking both compensatory and punitive or exemplary damages has been brought against an insured for a claim otherwise within the coverage provided by this policy, we will provide a defense for such action.  We will not have any obligation to pay for any costs, interest or other sums of any kind attributable to punitive or exemplary damages, or any fines or penalties of any nature.

## EXCLUSION – ASBESTOS, SILICA AND FORMALDEHYDE

This insurance does not apply to:

(1) "bodily injury" caused by asbestosis, silicosis, mesothelioma, emphysema, pneumoconiosis, pulmonary fibrosis, pleuritis, endothelioma or any other disease or ailment caused by or aggravated by exposure to, or inhalation, consumption or absorption of, asbestos fibers or dust, silica dust or formaldehyde of any kind whatsoever;

(2) "property damage" due to or arising out of the actual or alleged presence of asbestos, silica or formaldehyde in any form whatsoever, including the costs of investigating or testing for, monitoring, cleaning up, removing or disposing of any such substance;

(3) any loss, cost or expense arising out of any:

(a) request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess, the effects of asbestos fibers or dust, silica dust or formaldehyde of any kind whatsoever;
(b) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, any such substance.

## EXCLUSION – ASSAULT, BATTERY AND NEGLIGENT HIRING/SUPERVISION

This insurance does not apply to "bodily injury" or "property damage":

    (1) Arising out of an assault or battery, provoked or unprovoked, or out of any act or omission in connection with prevention or suppression of an assault or battery, committed by any insured or an employee or agent of any insured; or

    (1) Arising out of any allegations that any insured's acts, errors or omissions, whether negligent or otherwise, in connection with the hiring, retention, training, supervision or control of any employees, agents or representatives, caused, or contributed or related to, any assault or battery.

## EXCLUSION – INDEPENDENT CONTRACTORS' EMPLOYEES OR LEASED WORKERS

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or "medical payments" to:

    (1) Any employee or leased worker of independent contractors arising out of operations performed for the insured by said independent contractors or an insured's acts or omissions in connection with the general supervision of such operations if the insured has rejected the obligation of any workers' compensation or any similar law, or abrogated, waived or otherwise set aside common rights or defenses generally accorded an employer under any workers' compensation, disability benefits or unemployment compensation law or similar law; or

    (2) The spouse, child, parent, brother or sister of that employee or leased worker as a consequence of (1) above.

## EXCLUSION - DOGS

This insurance does not apply to "bodily injury", "property damage" or "medical payments" caused by a dog of any breed whether or not such dog is owned by the insured.

ATR- 11
07/2003

3 of 4

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

This insurance does not apply to:

   (1) "Bodily injury" or "property damage" which would not have occurred in
        whole or in part but for the actual, alleged or threatened discharge,
        dispersal, seepage, migration, release or escape of "pollutants" at any time.
   (2) Any loss, cost or expense arising out of any:

         (a) Request, demand, order or statutory or regulatory requirement that
              any insured or others test for, monitor, clean up, remove, contain,
              treat, detoxify or neutralize, or in any way respond to, or assess the
              effects of "pollutants"; or

         (b) Claim or suit by or on behalf of a governmental authority for
              damages because of testing for, monitoring, cleaning up, removing,
              containing, treating, detoxifying or neutralizing, or in any way
              responding to, or assessing the effects of, "pollutants".

CG 21 49 09 99                    Copyright, Insurance Services Office, Inc., 1998

---

## ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

PERSONAL LIABILITY
DL 01 06 06 97

UNLESS OTHERWISE PROVIDED, THE TERMS AND PROVISIONS OF THIS ENDORSEMENT MODIFY THE INSURANCE PROVIDED UNDER YOUR POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – CONNECTICUT

PERSONAL LIABILITY ADDITIONAL POLICY CONDITIONS

Item 1. Concealment or Fraud is deleted.

6. Cancellation. The first two paragraphs of b. are deleted and replaced by the following:

b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations by registered mail, certified mail or United States Post Office certificate of mailing.

The following Condition is added:

7. Nonrenewal. We may elect not to renew this policy and may do so by letting you know in writing at least 60 days before the expiration date of this policy. The written notice, stating the reasons for nonrenewal, may be delivered to you, or mailed to you at your mailing address shown in the Declarations by registered mail, certified mail or United States Post Office certificate of mailing.

All other provisions of this policy apply.

DL 01 06 06 97          Copyright, Insurance Services Office, Inc., 1997          Page 1 of 1

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "business" includes trade, profession or occupation.

3. "insured" means you and residents of your household who are:

   a. your relatives;

   b. other persons under the age of 21 and in the care of any person named above;

   c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3a or 3b above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured;"

   d. with respect to any vehicle to which this policy applies:

      (1) persons while engaged in your employ or that of any person included in 3a or 3b above; or

      (2) other persons using the vehicle on an "insured location" with your consent.

4. "insured location" means:

   a. the "residence premises;"

   b. the part of other premises, other structures and grounds used by you as a residence and:

      (1) which is shown in the Declarations; or

      (2) which is acquired by you during the policy period for your use as a residence;

   c. any premises used by you in connection with a premises in 4a or 4b above;

   d. any part of a premises:

      (1) not owned by an "insured;" and

      (2) where an "insured" is temporarily residing;

   e. vacant land, other than farm land, owned by or rented to an "insured;"

   f. land owned by or rented to an "insured" on which a one to four family dwelling is being built as a residence for an "insured;"

   g. individual or family cemetery plots or burial vaults of an "insured;" or

   h. any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "bodily injury;" or

   b. "property damage."

6. "property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "residence employee" means:

   a. an employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. one who performs similar duties elsewhere not related to the "business" of an "insured."

8. "residence premises" means:

   a. the one family dwelling, other structures, and grounds; or

   b. that part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two, three or four family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

    Copyright, Insurance Services Office, Inc., 1988, 1992

## LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured."

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

### COVERAGE M – MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. to a person on the "insured location" with the permission of an "insured;" or

2. to a person off the "insured location," if the "bodily injury:"

   a. arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. is caused by the activities of an "insured;"

   c. is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured;" or

   d. is caused by an animal owned by or in the care of an "insured."

## EXCLUSIONS

1. Coverage L-Personal Liability and Coverage M-Medical Payments to Others do not apply to "bodily injury" or "property damage:"

   a. which is expected or intended by the "insured."

   b.(1) arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the "business;"

   (2) arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location:"

     (a) on an occasional basis if used only as a residence;

     (b) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

     (c) in part, as an office, school, studio or private garage.

   c. arising out of the rendering of or failure to render professional services.

   d. arising out of a premises:

     (1) owned by an "insured;"

     (2) rented to an "insured;" or

     (3) rented to others by an "insured;"

     that is not an "insured location."

   e. arising out of:

     (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured;"

     (2) the entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

     (3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

     This exclusion does not apply to:

     (1) a trailer not towed by or carried on a motorized land conveyance.

Copyright, Insurance Services Office, Inc., 1988, 1992   DL 24 01 07 88

(2) a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

  (a) not owned by an "insured;" or

  (b) owned by an "insured" and on a "insured location."

(3) a motorized golf cart when used to play golf on a golf course.

(4) a vehicle or conveyance not subject to motor vehicle registration which is:

  (a) used to service an "insured's" residence;

  (b) designed for assisting the handicapped; or

  (c) in dead storage on an "insured location."

f. arising out of:

(1) the ownership, maintenance, use, loading or unloading of a watercraft described below;

(2) the entrustment by an "insured" of a watercraft described below to any person; or

(3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a watercraft described below.

Watercraft:

(1) with inboard or inboard-outdrive motor power owned by an "insured;"

(2) with inboard or inboard-outdrive motor power of more than 50 horsepower rented to an "insured;"

(3) that are sailing vessels, with or without auxiliary power, 26 feet or more in length owned by or rented to an "insured;" or

(4) powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an "insured." But, outboard motors of more than 25 total horsepower are covered for the policy period if:

  (a) you acquire them prior to the policy period and:

    (i) you declare them at policy inception; or

    (ii) your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

  (b) you acquire them during the policy period.

This exclusion does not apply while the watercraft is stored.

g. arising out of:

(1) the ownership, maintenance, use, loading or unloading of an aircraft;

(2) the entrustment by an "insured" of an aircraft to any person; or

(3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

h. caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

i. which arises out of the transmission of a communicable disease by an "insured."

j. arising out of sexual molestation, corporal punishment or physical or mental abuse.

k. arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions d., e., f., and g. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

2. **Coverage L-Personal Liability,** does not apply to:

a. liability:

(1) for any loss assessment charged against you as a member of an association, corporation or community of property owners;

(2) under any contract or agreement. However, this exclusion does not apply to written contracts:

  (a) that directly relate to the ownership, maintenance or use of an "insured location;" or

  (b) where the liability of others is assumed by the "insured" prior to an "occurrence;"

  unless excluded in (1) above or elsewhere in this policy.

b. "property damage" to property owned by the "insured."

c. "property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion.

Copyright, Insurance Services Office, Inc., 1988, 1992

d. "bodily injury" to any person eligible to receive any benefits:

(1) voluntarily provided; or

(2) required to be provided;

by the "insured" under any:

(1) workers' compensation law;

(2) non-occupational disability law; or

(3) occupational disease law.

e. "bodily injury" or "property damage" for which an "insured" under this policy:

(1) is also an insured under a nuclear energy liability policy; or

(2) would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1) American Nuclear Insurers;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors.

f. "bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage M-Medical Payments to Others,** does not apply to "bodily injury:"

a. to a "residence employee" if the "bodily injury:"

(1) occurs off the "insured location;" and

(2) does not arise out of or in the course of the "residence employee's" employment by an "insured."

b. to any person eligible to receive benefits:

(1) voluntarily provided; or

(2) required to be provided;

under any:

(1) workers' compensation law;

(2) non-occupational disability law; or

(3) occupational disease law.

c. from any:

(1) nuclear reaction;

(2) nuclear radiation; or

(3) radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4) any consequence of any of these.

d. to any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

## ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

a. expenses we incur and costs taxed against an "insured" in any suit we defend;

b. premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage L. We need not apply for or furnish any bond;

c. reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit;

d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

We will not pay for "property damage:"

a. caused intentionally by an "insured" who is 13 years of age or older;

b. to property owned by an "insured;"

c. to property owned by or rented to a tenant of an "insured" or a resident in your household; or

d. arising out of:

(1) a "business" engaged in by an "insured;"

(2) any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location;" or

(3) the ownership, maintenance or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

Copyright, Insurance Services Office, Inc., 1988, 1992

DL 24 01 07 88

## CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage L for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage L as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

   Our total liability under Coverage M for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage M as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. give written notice to us or our agent as soon as is practical, which sets forth:

      (1) the identity of the policy and "insured;"

      (2) reasonably available information on the time, place and circumstances of the accident or "occurrence;" and

      (3) names and addresses of any claimants and witnesses;

   b. promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence;"

   c. at our request, help us:

      (1) to make settlement;

      (2) to enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured;"

      (3) with the conduct of suits and attend hearings and trials;

      (4) to secure and give evidence and obtain the attendance of witnesses;

   d. under the coverage — Damage to Property of Others — submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

   e. the "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person-Coverage M-Medical Payments to Others.**

   The injured person or someone acting for the injured person will:

   a. give us written proof of claim, under oath if required, as soon as is practical; and

   b. authorize us to obtain copies of medical reports and records.

   The injured person will submit to physical examination by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim-Coverage M-Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage L can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance-Coverage L-Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9. **Policy Period.** This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

10. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

    If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

    Subrogation does not apply to Medical Payments to Others or Damage to Property of Others.

**PERSONAL LIABILITY**
**DL 24 11 07 88**

## PREMISES LIABILITY
### (Non-Owner Occupied Dwelling)

For the premium charged, the premises shown below are included in the definition of "insured location."

Coverage L - Personal Liability and Coverage M - Medical Payments to Others are restricted to apply only with respect to "bodily injury" and "property damage" arising out of the ownership, maintenance or use of the premises shown below.

Exclusion 1.b.(2) does not apply to the premises shown below.

**Location\***                                                    **Number of Families\***
108 East Lake St.
Winsted
CONNECTICUT
06098

\*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

      Copyright, Insurance Services Office, Inc., 1988

PERSONAL LIABILITY
DL 24 16 07 88

## <u>NO</u> COVERAGE FOR
## HOME DAY CARE BUSINESS

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy does not provide coverage, because a "business" of an "insured" is excluded under Exclusion 1.b.(1).

THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.

   Copyright, Insurance Services Office, Inc., 1988

PERSONAL LIABILITY
DL 25 06 03 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – CONNECTICUT

### DEFINITIONS

Paragraph A. is replaced by the following:

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and:

1. The spouse; or

2. A party who, with the "named insured", has entered into a civil union under, recognized under Connecticut law;

if a resident of the same household.

### EXCLUSIONS

Under Item 2. Coverage L – Personal Liability in Endorsement DL 24 01, Paragraph f. is deleted and in Endorsement DL 24 82, Item 6. is deleted.

### CONDITIONS

Paragraph 5. Death is replaced by the following:

5. Death

If any person named in the Declarations or:

a. The spouse if a resident of the same household; or

b. A party who has entered into a civil union, recognized under Connecticut law, with any person named in the Declarations if a resident of the same household;

dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

2. "Insured" includes:

a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

The following condition is added:

11. Concealment or Fraud. The entire policy will be void if, whether before or after a loss, an "insured" has intentionally:

a. Concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made material false statements;

relating to this insurance.

All other provisions of this policy apply.

 © ISO Properties, Inc., 2005

PERSONAL LIABILITY
DL 25 06 06 97

UNLESS OTHERWISE PROVIDED, THE TERMS AND PROVISIONS OF THIS ENDORSEMENT
MODIFY THE INSURANCE PROVIDED UNDER YOUR POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – CONNECTICUT

**EXCLUSIONS**

Under Item **2. Coverage L – Personal Liability** in Endorsement **DL 24 01,** Paragraph **f.** is deleted and in Endorsement **DL 24 82,** Item **6.** is deleted.

**CONDITIONS**

The following condition is added:

11. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has intentionally:

   a. concealed or misrepresented any material fact or circumstance;

   b. engaged in fraudulent conduct; or

   c. made material false statements;

   relating to this insurance.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1997

DWELLING
DP 00 03 12 02

# DWELLING PROPERTY 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

## COVERAGES

This insurance applies to the Described Location, Coverages for which a Limit of Liability is shown and Perils Insured Against for which a Premium is stated.

### A. Coverage A – Dwelling

1. We cover:

   a. The dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes, including structures attached to the dwelling;

   b. Materials and supplies located on or next to the Described Location used to construct, alter or repair the dwelling or other structures on the Described Location; and

   c. If not otherwise covered in this policy, building equipment and outdoor equipment used for the service of and located on the Described Location.

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the Described Location, set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures used in whole or in part for commercial, manufacturing or farming purposes. However, we do cover a structure that contains commercial, manufacturing or farming property solely owned by you or a tenant of the dwelling provided that such property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure; or

   d. Gravemarkers, including mausoleums.

### C. Coverage C – Personal Property

1. Covered Property

   We cover personal property, usual to the occupancy as a dwelling and owned or used by you or members of your family residing with you while it is on the Described Location. After a loss and at your request, we will cover personal property owned by a guest or servant while the property is on the Described Location.

2. Property Not Covered

   We do not cover:

   a. Accounts, bank notes, bills, bullion, coins, currency, deeds, evidences of debt, gold other than goldware, letters of credit, manuscripts, medals, money, notes other than bank notes, passports, personal records, platinum other than platinumware, securities, silver other than silverware, tickets, stamps, scrip, stored value cards and smart cards;

   b. Animals, birds or fish;

   c. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

      We do cover model or hobby aircraft not used or designed to carry people or cargo;

   d. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

   e. Motor vehicles or all other motorized land conveyances.

      (1) This includes:

         (a) Their accessories, equipment and parts; or

© ISO Properties, Inc., 2002

(b) Any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles and all other motorized land conveyances, and its accessories. Accessories include antennas, tapes, wires, records, discs or other media that can be used with any device or instrument described above.

The exclusion of property described in (a) and (b) above applies only while such property is in or upon the vehicle or conveyance.

(2) We do cover motor vehicles or other motorized land conveyances not required to be registered for use on public roads or property which are:

(a) Used solely to service the Described Location; or

(b) Designed to assist the handicapped;

f. Watercraft of all types, other than rowboats and canoes;

g. Data, including data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment;

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

h. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds;

i. Water or steam; or

j. Gravemarkers, including mausoleums.

3. **Property Removed To A Newly Acquired Principle Residence**

If you remove personal property from the Described Location to a newly acquired principal residence, the Coverage C limit of liability will apply at each residence for the 30 days immediately after you begin to move the property there. This time period will not extend beyond the termination of this policy. Our liability is limited to the proportion of the limit of liability that the value at each residence bears to the total value of all personal property covered by this policy.

D. **Coverage D – Fair Rental Value**

1. If a loss to property described in Coverage A, B or C by a Peril Insured Against under this policy makes that part of the Described Location rented to others or held for rental by you unfit for its normal use, we cover the fair rental value of that part of the Described Location rented to others or held for rental by you less any expenses that do not continue while that part of the Described Location rented or held for rental is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the Described Location rented or held for rental.

2. If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a Peril Insured Against in this policy, we cover the Fair Rental Value loss for no more than two weeks.

3. The periods of time referenced above are not limited by the expiration of this policy.

4. We do not cover loss or expense due to cancellation of a lease or agreement.

E. **Coverage E – Additional Living Expense**

1. If a loss to property described in Coverage A, B or C by a Peril Insured Against under this policy makes the Described Location unfit for its normal use, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the Described Location or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a Peril Insured Against in this policy, we cover the Additional Living Expense loss for no more than two weeks.

3. The periods of time referenced above are not limited by the expiration of this policy.

4. We do not cover loss or expense due to cancellation of a lease or agreement.

F. **Other Coverages**

1. **Other Structures**

You may use up to 10% of the Coverage A limit of liability for loss by a Peril Insured Against to other structures described in Coverage B.

This coverage is additional insurance.

© ISO Properties, Inc., 2002

DP 00 03 12 02

2. **Debris Removal**

We will pay your reasonable expense for the removal of:

a. Debris of covered property if a Peril Insured Against causes the loss; or

b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property.

3. **Improvements, Alterations And Additions**

If you are a tenant of the Described Location, you may use up to 10% of the Coverage C limit of liability for loss by a Peril Insured Against to improvements, alterations and additions, made or acquired at your expense, to that part of the Described Location used only by you.

This coverage is additional insurance.

4. **World-Wide Coverage**

You may use up to 10% of the Coverage C limit of liability for loss by a Peril Insured Against to property covered under Coverage C except rowboats and canoes, while anywhere in the world.

Use of this coverage reduces the Coverage C limit of liability for the same loss.

5. **Rental Value And Additional Living Expense**

You may use up to 20% of the Coverage A limit of liability for loss of both fair rental value as described in Coverage D and additional living expense as described in Coverage E.

This coverage is additional insurance.

6. **Reasonable Repairs**

a. In the event that covered property is damaged by a Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage.

b. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by a Peril Insured Against. This coverage does not:

(1) Increase the limit of liability that applies to the covered property; or

(2) Relieve you of your duties, in case of a loss to covered property, as set forth in Condition D.2.

7. **Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

8. **Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the Described Location for loss caused by the following Perils Insured Against:

a. Fire or lightning;

b. Explosion;

c. Riot or civil commotion;

d. Aircraft;

e. Vehicles not owned or operated by you or a resident of the Described Location; or

f. Vandalism or malicious mischief, including damage during a burglary or attempted burglary, but not theft of property.

The limit of liability for this coverage will not be more than 5% of the Coverage A limit of liability, or more than $500 for any one tree, shrub or plant. We do not cover property grown for commercial purposes.

This coverage is additional insurance.

9. **Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

10. **Collapse**

a. With respect to this Other Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

© ISO Properties, Inc., 2002

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) The Perils Insured Against named under Coverage **C**;

(2) Decay that is hidden from view, unless the presence of such decay is known to you prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to you prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability that applies to the damaged covered property.

11. **Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

(2) On the Described Location if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided for in **a.(2)** above. A dwelling being constructed is not considered vacant.

c. This coverage does not increase the limit of liability that applies to the damaged property.

12. **Ordinance Or Law**

a. The Ordinance Or Law limit of liability determined in **b.** or **c.** below will apply with respect to the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. If you are an owner of a Described Location, and that location:

(1) Is insured for Coverage A or Unit-Owners Building Items, you may use up to 10% of the limit of liability that applies to Coverage A or Unit-Owners Building Items at each Described Location; or

© ISO Properties, Inc., 2002

(2) Is not insured for Coverage A or Unit-Owners Building Items, you may use up to 10% of the total limit of liability that applies to Coverage B at each Described Location.

c. If you are a tenant of a Described Location, you may use up to 10% of the limit of liability that applies to Improvements, Alterations And Additions at each Described Location. Also, the words "covered building" used throughout this Other Coverage 12. Ordinance Or Law, refer to property at such a Described Location covered under Other Coverage 3. Improvements, Alterations And Additions.

d. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

e. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

PERILS INSURED AGAINST

A. Coverage A – Dwelling And Coverage B – Other Structures

1. We insure against risk of direct physical loss to property described in Coverages A and B.

2. We do not insure, however, for loss:

a. Excluded under General Exclusions;

b. Involving collapse, except as provided in Other Coverage 10. Collapse; or

c. Caused by:

(1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

(a) Maintain heat in the building; or

(b) Shut off the water supply and drain all systems and appliances of water;

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

(2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(a) Fence, pavement, patio or swimming pool;

(b) Footing, foundation, bulkhead, wall, or any other structure or device, that supports all or part of a building or other structure;

(c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

(d) Pier, wharf or dock;

(3) Theft of property not part of a covered building or structure;

(4) Theft in or to a dwelling or structure under construction;

(5) Wind, hail, ice, snow or sleet to:

(a) Outdoor radio and television antennas and aerials including their lead-in wiring, masts or towers; or

(b) Trees, shrubs, plants or lawns;

© ISO Properties, Inc., 2002

(6) Vandalism and malicious mischief, theft or attempted theft, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, theft or attempted theft, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

(7) Constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

(8) Any of the following:

(a) Wear and tear, marring, deterioration;

(b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

(c) Smog, rust or other corrosion, mold, wet or dry rot;

(d) Smoke from agricultural smudging or industrial operations;

(e) Discharge, dispersal, seepage, migration release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings; or

(g) Birds, vermin, rodents, insects or domestic animals.

Exception To c.(8)

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a:

(i) Storm drain, or water, steam or sewer pipe, off the Described Location; or

(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the Described Location. This includes the cost to tear out and replace any part of a building, or other structure, on the Described Location, but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the Described Location.

We do not cover loss to the system or appliance from which this water or steam escaped.

For the purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or roof drain, gutter, down spout or similar fixtures or equipment.

General Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of ground do not apply to loss by water covered under c.(8) above.

Under 2.b. and c. above, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

B. Coverage C – Personal Property

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in the General Exclusions.

1. Fire Or Lightning

2. Windstorm Or Hail

This peril does not include loss to:

a. Property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening;

b. Canoes and rowboats; or

c. Trees, shrubs or plants.

3. **Explosion**

4. **Riot Or Civil Commotion**

5. **Aircraft**

   This peril includes self-propelled missiles and spacecraft.

6. **Vehicles**

7. **Smoke**

   This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism Or Malicious Mischief**

   This peril does not include loss by pilferage, theft, burglary or larceny.

9. **Damage By Burglars**

   a. This peril means damage to covered property caused by burglars.

   b. This peril does not include:

      (1) Theft of property; or

      (2) Damage caused by burglars to property on the Described Location if the dwelling has been vacant for more than 60 consecutive days immediately before the damage occurs. A dwelling being constructed is not considered vacant.

10. **Falling Objects**

    This peril does not include loss to property contained in the building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not covered.

11. **Weight Of Ice, Snow Or Sleet**

    This peril means weight of ice, snow or sleet which causes damage to property contained in the building.

12. **Accidental Discharge Or Overflow Of Water Or Steam**

    a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    b. This peril does not include loss:

       (1) To the system or appliance from which the water or steam escaped;

       (2) Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing; or

       (3) On the Described Location caused by accidental discharge or overflow which occurs off the Described Location.

    c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment; or a roof drain, gutter, downspout or similar fixtures or equipment.

    d. General Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

    This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing except as provided in the peril of freezing below.

14. **Freezing**

    a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

       (1) Maintain heat in the building; or

       (2) Shut off the water supply and drain all systems and appliances of water.

       However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

    b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment; or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden And Accidental Damage From Artificially Generated Electrical Current**

    This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

 © ISO Properties, Inc., 2002

16. **Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

**GENERAL EXCLUSIONS**

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. **Ordinance Or Law**

Ordinance Or Law means any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided under Other Coverage **12.** Ordinance Or Law;

b. The requirements of which result in a loss in value to property; or

c. Requiring you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion **A.1.** applies whether or not the property has been physically damaged.

2. **Earth Movement**

Earth Movement means:

a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

b. Landslide, mudslide or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

3. **Water Damage**

Water Damage means:

a. Flood, surface water, waves, tidal water, overflow of a body of water or spray from any of these, whether or not driven by wind;

b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire or explosion resulting from water damage is covered.

4. **Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the Described Location. But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the Described Location, we will pay for the loss caused by that Peril Insured Against.

5. **Neglect**

Neglect means your neglect to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War**

War includes the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel;

c. Destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in the Nuclear Hazard Clause of the Conditions.

8. **Intentional Loss**

Intentional Loss means any loss arising out of any act you or any person or organization named as an additional insured commits or conspires to commit with the intent to cause a loss.

© ISO Properties, Inc., 2002 DP 00 03 12 02

In the event of such loss, neither you nor any such person or organization is entitled to coverage, even those who did not commit or conspire to commit the act causing the loss.

9. **Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

   a. Planning, zoning, development, surveying, siting;

   b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   c. Materials used in repair, construction, renovation or remodeling; or

   d. Maintenance;

   of part or all of any property whether on or off the Described Location.

**CONDITIONS**

A. **Policy Period**

This policy applies only to loss which occurs during the policy period.

B. **Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. For an amount greater than the interest of a person insured under this policy at the time of loss; or

2. For more than the applicable limit of liability.

C. **Concealment Or Fraud**

We provide coverage to no persons insured under this policy if, whether before or after a loss, one or more persons insured under this policy have:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

D. **Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you or your representative:

1. Give prompt notice to us or our agent;

2. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

3. Cooperate with us in the investigation of a claim;

4. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

5. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another named insured, and sign the same;

6. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. Your interest and that of all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

© ISO Properties, Inc., 2002

f. The inventory of damaged personal property described in D.3.;

g. Receipts for additional living expenses incurred and records that support the fair rental value loss.

E. **Loss Settlement**

In this Condition E., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law except to the extent that coverage for these increased costs is provided in Other Coverage F.**12.** Ordinance Or Law. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

   c. Structures that are not buildings;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

      If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

   b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

      (1) The actual cash value of that part of the building damaged; or

      (2) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

   c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

      (1) Excavations, footings, foundations, piers or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

      (2) Those supports in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

      (3) Underground flues, pipes, wiring and drains.

   d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a. and b. above.

      However, if the cost to repair or replace the damage is both:

      (1) Less than 5% of the amount of insurance in this policy on the building; and

      (2) Less than $2,500;

      we will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.

© ISO Properties, Inc., 2002

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition E. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

## F. Loss To A Pair Or Set

In case of loss to a pair or set we may elect to:

1. Repair or replace any part to restore the pair or set to its value before the loss; or

2. Pay the difference between actual cash value of the property before and after the loss.

## G. Appraisal

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

## H. Other Insurance And Service Agreement

If property covered by this policy is also covered by:

1. Other fire insurance, we will pay only the proportion of a loss caused by any peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of fire insurance covering the property; or

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

## I. Subrogation

You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, the person insured must sign and deliver all related papers and cooperate with us.

## J. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under this policy and the action is started within two years after the date of loss.

## K. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

## L. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

## M. Abandonment Of Property

We need not accept any property abandoned by you.

## N. Mortgage Clause

1. If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Paragraphs G. Appraisal, J. Suit Against Us and L. Loss Payment also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

O. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

P. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   (2) If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

Q. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

R. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

© ISO Properties, Inc., 2002
DP 00 03 12 02

**S. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**T. Assignment**

Assignment of this policy will not be valid unless we give our written consent

**U. Death**

If you die, we insure:

1. Your legal representatives but only with respect to the property of the deceased covered under the policy at the time of death;

2. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**V. Nuclear Hazard Clause**

1. "Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**W. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**X. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**Y. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, that person is considered an insured in this policy with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – CONNECTICUT

### DEFINITIONS

The first sentence of the lead in to the **Definitions** Section is deleted and replaced by the following:

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and:

a. The spouse; or

b. A party who, with the "named insured", has entered into a civil union, recognized under Connecticut law; if a resident of the same household.

### COVERAGES

#### OTHER COVERAGES

(All forms except DP 00 01), Paragraph **f.** under Item **10. Collapse** is deleted and replaced by the following:

    f. Use of defective material or methods in construction, remodeling or renovation.

11. In Forms **DP 00 02** and **DP 00 03, Glass Or Safety Glazing Material** is deleted and replaced by the following:

**11. Glass Or Safety Glazing Material**

    a. We cover:

        (1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

        (2) The breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window; and

        (3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

    b. This coverage does not include loss:

        (1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

        (2) On the Described Location if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this Other Coverage **11.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

The following Other Coverage is added to all forms except **DP 00 01**. When you are a tenant of a Described Location covered under this policy, the words 'covered building' used below, refer to property at such a Described Location covered under Other Coverage **3.** Improvements, Alterations And Additions.

**12. Ordinance Or Law**

    a. The Ordinance or Law limit of liability determined in **b.** or **c.** below will apply with respect to the increased costs you incur due to the enforcement of any ordinance or law which required or regulates:

        (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

        (2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage to another part of that covered building or other structure; or

        (3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

    b. If you are an owner of a Described Location, and that location:

        (1) Is insured for Coverage **A** or Unit-Owner Building Items, you may use up to 10% of the limit of liability that applies to Coverage **A** or Unit-Owner Building Items at each Described Location; or

© ISO Properties, Inc., 2005

(2) Is not insured for Coverage A or Unit-Owner Building Items, you may use up to 10% of the total limit of liability that applies to Coverage B at each Described Location.

c. If you are a tenant of a Described Location, you may use up to 10% of the limit of liability that applies to Improvements, Alterations and Additions at each Described Location.

d. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

e. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires you or others to test for, monitor, clean up, remove, contain treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**GENERAL EXCLUSIONS**

1. **Ordinance Or Law** is deleted and replaced by the following:

1. **Ordinance Or Law,** meaning any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **1.a.** in Form **DP 00 02, A.1.a.** in Form **DP 00 01,** and **1.a.(1)** in Form **DP 00 03,** does not apply to the amount of coverage that may be provided under Other Coverages, Glass or Safety Glazing Material or Ordinance or Law;

b. The requirements of which result in a loss in value to property; or

c. Requiring you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is Exclusion **A.1.** in Form **DP 00 01** and Exclusion **1.a.** in Form **DP 00 03.**)

2. For all forms other than **DP 00 01, Earth Movement** is deleted and replaced by the following:

2. **Earth Movement,** meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

a. Fire; or

b. Explosion;

ensues and then we will pay only for the ensuing loss.

(This is Exclusion **1.b.** in Form **DP 00 03.**)

4. **Power Failure** is deleted and replaced by the following:

4. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the Described Location. But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the Described Location, we will pay for the loss or damage caused by that Peril Insured Against.

(This is Exclusion **1.d.** in Form **DP 00 03.**)

Item **8. Intentional Loss** is deleted and replaced by the following:

8. **Intentional Loss.** We do not provide coverage for a person insured under this policy who commits or directs an act with the intent to cause a loss. (This is Item **1.h.** in Form **DP 00 03.**)

**CONDITIONS**

Item **3. Concealment Or Fraud** is deleted and replaced by the following:

3. **Concealment Or Fraud.** The entire policy will be void if, whether before or after a loss, you have intentionally:

a. Concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made material false statements;

relating to this insurance.

© ISO Properties, Inc., 2005 **DP 01 06 03 06**

Item **15. Mortgage Clause** is deleted and replaced by the following:

**15. Mortgagee Interest And Obligations.** If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee ten days' written notice of cancellation.

If the insured fails to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of such mortgagee may be added hereto by agreement in writing.

Item **17. Cancellation.** The first two paragraphs of b. and Item b.(2) are deleted and replaced by the following:

b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice, stating the reasons for cancellation, may be delivered to you, or mailed to you at your mailing address shown in the Declarations by registered mail, certified mail or United States Post Office certificate of mailing. The notice will state that excess premium (if not tendered) will be refunded on demand.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel by letting you know at least 30 days before the date cancellation takes effect.

Item **18. Nonrenewal** is deleted and replaced by the following:

**18. Nonrenewal.** We may elect not to renew this policy and may do so by letting you know in writing at least 60 days before the expiration date of this policy. The written notice, stating the reasons for nonrenewal, may be delivered to you, or mailed to you at your mailing address shown in the Declarations by registered mail, certified mail or United States Post Office certificate of mailing.

All other provisions of this policy apply.

DP 01 06 03 06          © ISO Properties, Inc., 2005

DWELLING
DP 04 76 12 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ACTUAL CASH VALUE LOSS SETTLEMENT

**CONDITIONS**

Paragraph **E. Loss Settlement** is deleted and replaced by the following:

**E. Loss Settlement**

Covered property losses shall be settled at actual cash value at the time of loss but shall not be settled at more than the amount required to repair or replace.

All other provisions of this policy apply.

© ISO Properties, Inc.,  2002

## MOLD AND FUNGI EXCLUSION CLAUSE

Notwithstanding any other provision of this policy, there is no coverage for any loss or damage involving in any way the actual or potential presence of mold, mildew or fungi of any kind whatsoever, whether or not directly or indirectly caused by or resulting from an Insured Peril.

ATR-1
07/2001

*For use with first party dwelling forms only.*

## MOLD AND FUNGI EXCLUSION CLAUSE

Notwithstanding any other provision in this policy, there is no coverage for the following:

For any Bodily Injury, Property Damage or Medical Payment claim of any kind directly or indirectly relating to the actual, potential, alleged or threatened presence of mold, mildew or fungi of any kind whatsoever.

We will not defend any Insured with respect to any claim or "suit" seeking such damages.

We will not pay for any loss, cost or expense that any Insured may incur in testing for, monitoring, removing, treating or in any way responding to the actual, potential, alleged or threatened presence of mold, mildew or fungi of any kind whatsoever.

ATR-6
07/2001

*For use with dwelling third party coverage.*

## RENOVATIONS OR CONSTRUCTION WORK OPERATIONS EXCLUSIONS

The following additional exclusion applies to Section 1 – Property:

It is understood and agreed that no coverage is available for any loss or damage directly or indirectly arising out of or relating to any renovation or construction work being performed at or upon the insured premises during the period of this policy.

The following additional exclusion applies to Section 2 – Liability (to the extent such coverage is provided under this policy as shown on the Declarations):

It is understood and agreed that that no coverage is available for claims for Bodily Injury, Property Damage or Medical Payments directly or indirectly arising out of or relating to any renovations or construction work being performed at or upon the insured premises during the period of this policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

ATR-8
12/2005

## "OTHER STRUCTURES" COVERAGE ENDORSEMENT
### (VACANT PROPERTY)

In consideration of the premium charged and based upon the information submitted in the Application for this insurance, it is understood and agreed as follows:

Notwithstanding any contrary terms in the policy form to which this endorsement is attached, the Limits shown on the Declarations for "Other Structures" shall be the total maximum limit of insurance available.

The coverage afforded under this policy for "Other Structures" is additional insurance, and any loss payment for physical loss or damage to the "Other Structures" covered under this policy shall not affect the limits applicable to the main building as shown on the Declarations.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

ATR-19
12/2015

## VACANCY PERMIT – DWELLING PROPERTY (SPECIAL)

In consideration of the premium charged, it is understood and agreed that paragraph 2. c. (6) in the Perils Insured Against section of Policy Form DP 00 03 12 02 is deleted and replaced as follows:

    (1)    Permission is granted for the insured building(s) on the property set forth in the Declarations to be vacant or unoccupied during the period of this insurance, subject to the following warranties by the Insured:

- All doors, windows and other means of ingress into the insured building(s) shall be fully secured against unauthorized entry at all times during the policy period.

- The insured property shall be inspected regularly by the Insured or the Insured's agent during the policy period.

- All rubbish shall be regularly removed from within and around the insured building(s) during the policy period.

- The insured property shall remain vacant or unoccupied for the duration of this Policy.

    If these warranties are not complied with, this Policy shall be void; and

    (2)    Unless specifically added by separate endorsement to this Policy, no coverage is available hereunder in respect of physical loss or damage caused by Vandalism or Malicious Mischief.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

ATR-21
01/2012

## VANDALISM  OR MALICIOUS MISCHIEF ENDORSEMENT – DWELLING PROPERTY (SPECIAL)

In consideration of the premium charged, it is understood and agreed that coverage is afforded hereunder for direct physical loss or damage caused by Vandalism or Malicious Mischief which is defined to mean wilful and malicious damage to insured building(s).

This coverage is subject to the following additional condition:

- Any physical loss or damage caused by Vandalism or Malicious Mischief must be reported to Underwriters within ten (10) days after the Insured first learns of the loss or damage.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

ATR-23
03/2009

## MINIMUM EARNED PREMIUM ENDORSEMENT
### (VACANT PROPERTY)

In consideration of the premium charged, it is understood and agreed that if this policy is cancelled by the Insured after the inception date, the minimum earned premium for this policy is 50.00% of the total premium without any short rate or pro rata adjustment.

It is further understood and agreed that cancellation of the policy for non-payment of premium after the inception date shall be deemed a cancellation of the policy by the Insured for purposes of this endorsement.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

ATR-30
10/2004

## SPRINKLER LEAKAGE EXCLUSION
### (VACANT DWELLING PROPERTY – SPECIAL)

In consideration of the premium charged, it is understood and agreed that section A.2.c.(1), PERILS INSURED AGAINST, of policy form DP 00 03 12 02 is amended to exclude coverage for physical loss or damage directly or indirectly caused by any release of water or any other substance from any automatic fire protective sprinkler system at the insured building(s).

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

ATR-34
11/2004

POLICY NUMBER: ATR/R/455483.01

## Schedule of Underwriters

## Certain Underwriter's at Lloyd's, London

100% Syndicate 609

ATR-35
09/2016

## SWIMMING POOL LIMITED PREMISES LIABILITY COVERAGE ENDORSEMENT

THIS ENDORSEMENT MODIFIES THE INSURANCE PROVIDED UNDER **COVERAGE L – PERSONAL LIABILITY**. IT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to "bodily injury" or "property damage" arising out of or in any way relating to any "swimming pool," pond, lake, or any related appurtenances, except as set forth below.

If a claim is made or suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by a "swimming pool" "occurrence" to which this coverage applies, we will:

    (1)    pay up to the limit of liability shown on the Declaration Page for **PREMISES LIABILITY COVERAGE** or $100,000, whichever is lower, for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured."

    (2)    provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability for **PREMISES LIABILITY COVERAGE or $100,000, whichever is lower.**

Our total liability under the **SWIMMING POOL LIMITED PREMISES LIABILITY COVERAGE** for all damages resulting from any one "occurrence" will not be more than the limit of liability for **PREMISES LIABILITY COVERAGE** as shown on the Declaration Page or $100,000, whichever is lower. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same harmful conditions shall be considered to be the result of one "occurrence."

In order for coverage to attach under the **SWIMMING POOL LIMITED PREMISES LIABILITY COVERAGE**, the "swimming pool" must be completely enclosed by a "barrier" and any gate or door allowing access to the "swimming pool" must be "self-closing" and "self-latching." The "swimming pool" "barrier" and all gates or doors allowing access to the "swimming pool" must meet or exceed the requirements set forth below, including but not limited to the following:

    (1)    the gate or door allowing access to the "swimming pool" must open outward away from the "swimming pool."

    (2)    Chain link fencing shall not be used as a "swimming pool" "barrier."

The term "swimming pool" means any structure intended for swimming or recreational bathing that is capable of containing water 24 inches deep or more, including, but not limited to, in-ground, aboveground, and on-ground swimming pools; hot tubs; fountains; spas; and any related appurtenances, such as decking, diving boards or slides located on the "residence premises."

The term "barrier" means a fence, wall, building wall or combination thereof which completely surrounds the "swimming pool" and obstructs unpermitted access to the "swimming pool."

The term "self-closing" means that the gate or door does not require manual assistance in order to be closed tightly.

The term "self-latching" means that the latch is automatically secured without any manual intervention as soon as the gate or door is closed.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

ATR-68
04/2008

## AMENDATORY ENDORSEMENT – PERSONAL LIABILITY COVERAGE

THIS ENDORSEMENT MODIFIES THE INSURANCE PROVIDED UNDER **COVERAGE L – PERSONAL LIABILITY**. IT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto, and in consideration of the premium charged, and based upon the information submitted in the Application for this insurance, it is understood and agreed as follows:

The definition of **"Insured"** as set forth in **Item 3** of the **Definitions** section of the **Personal Liability Coverage Form** (DL 24 01 07 88) is extended to include the following, but only with respect to the ownership, maintenance or use of the "insured location" identified in the **Premises Liability Coverage Form** (DL 24 11 07 88):

    e.    If you are designated in the Declarations as a partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds.

    f.    If you are designated in the Declarations as a limited liability corporation, you are an insured. Your members and managers are also insureds.

    g.    If you are designated in the Declarations as an organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers," directors and stockholders are also insureds.

    h.    If you are designated in the Declarations as a trust, you are an insured. Your trustees are also insureds.

    i.    Your "employees," other than your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company) are also Insureds, but only for acts or duties performed within the scope of their employment by you.

The following additional **Items** are added to the **Definitions** section of the **Personal Liability Coverage Form** (DL 24 01 07 88):

9.    "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws, or any other similar governing document.

10.    "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

11.    "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business, but only as those duties pertain to the ownership, maintenance or use of the "residence premises." "Leased worker" does not include a "temporary worker."

12.    "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short term workload conditions.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.
ATR-69

## COVERAGE F. (OTHER COVERAGES) EXCLUSION AND LIMITATION ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that the following are deleted in their entirety.

F. Other Coverages

      1. Other Structures
      3. Improvements, Alterations and Additions
      4. World-Wide Coverage
      5. Rental Value and Additional living Expenses
      7. Property Removed
      8. Trees, Shrubs and Other Plants
      10. Collapse
      11. Glass or Safety Glazing Material
      12. Ordinance or Law

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

ATR-71
11/2008

<u>**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**</u>

# <u>Pre-Existing Damage Exclusion</u>

**DWELLING PROPERTY**

The following is added to the **GENERAL EXCLUSIONS**:

We do not insure for loss caused directly or indirectly by any of the following:

a)   Any damage which occurred prior to policy inception regardless of whether such damage were apparent at the time of the inception of this policy or at a later date; or

b)   Any claims or damages arising out of workmanship, repairs and/or lack of repairs arising from damage which occurred prior to policy inception.

Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

**PERSONAL LIABILITY**

The following is added to the **EXCLUSIONS** section of the **PERSONAL LIABILITY** coverage form (to the extent such coverage is provided under this policy as shown on the Declarations):

**Coverage L-Personal Liability** and **Coverage M-Medical Payments to Others** do not apply to "bodily injury" or "property damage" or "medical payments" arising out of and/or relating to any of the following:

a)   Any damage which occurred prior to policy inception regardless of whether such damage were apparent at the time of the inception of this policy or at a later date; or

b)   Any claims or damages arising out of workmanship, repairs and/or lack of repairs arising from damage which occurred prior to policy inception.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

ATR-92
09 2017

<u>THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.</u>

# <u>Theft Amendatory Endorsement</u>
## <u>(Coverage A – Dwelling)</u>

This endorsement modifies insurance provided under Coverage A - Dwelling:

**Theft Sublimit:** <u>$25,000</u>

The sublimit shown above is the most we will pay for direct physical loss caused by or resulting from theft or attempted theft.

This limitation does not apply to:
1. Loss or damage that occurs due to looting at the time and place of a riot or civil commotion; or
2. Damage to Building caused by breaking in to or exiting from the Building.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

ATR-111
11/2014

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Water Damage Amendatory Endorsement
### (Dwelling Property - Special)

This endorsement modifies insurance provided:

**Water Damage Sublimit**: **Full limit**
The Water Damage Deductible per occurrence is restated as **$2,500**

The sublimit shown above is the most we will pay for direct physical loss resulting from the following:

1. **PERILS INSURED AGAINST** subsection **A. Coverage A – Dwelling And Coverage B – Other Structures 2.c.(1), (7)** and **Exception To c.(8);**

2. **PERILS INSURED AGAINST B. Coverage C – Personal Property**, paragraphs **12., 13.** and **14.**

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

ATR-112
06/2016

## SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

08/94
LSW1001 (Insurance)

## TOTAL OR CONSTRUCTIVE TOTAL LOSS

It is hereby understood and agreed that in the event of a Total or Constructive Total Loss of any item of property insured during the Period of Insurance specified in the Schedule and the loss is paid by Underwriters then the total premium for that property shall be considered to be fully earned.

This Endorsement shall not apply where State Law or any Premium Finance Agreement would be violated or infringed.

Constructive Total Loss shall be defined as "loss where the cost of recovery and repair would exceed the Limit of Liability shown in the Schedule or the actual cash value (whichever is the lesser amount)".

01/93
LSW546

## WAR AND CIVIL WAR EXCLUSION CLAUSE

(Approved by Lloyd's Underwriters' Non-Marine Association)

Notwithstanding anything to the contrary contained herein this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

1/1/38
NMA464

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE - PHYSICAL DAMAGE - DIRECT (U.S.A.)

This Policy does not cover any loss or damage arising directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination however such nuclear reaction nuclear radiation or radioactive contamination may have been caused * NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this Policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

* NOTE. - If Fire is not an insured peril under this Policy the words "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59
NMA1191

## LLOYD'S PRIVACY POLICY STATEMENT

### UNDERWRITERS AT LLOYD'S, LONDON

The Certain Underwriters at Lloyd's, Londc   want you to know how we protect the confidentiality of your non-public personal information.  We want you to know how and why we use and disclose the information that we have about you.  The following describes our policies and practices for securing the privacy of our current and former customers.

### INFORMATION WE COLLECT

The non-public personal information that we collect about you includes, but is not limited to:

- Information contained in applications or other forms that you submit to us, such as name, address, and social security number

- Information about your transactions with our affiliates or other third-parties, such as balances and payment history

- Information we receive from a consumer-reporting agency, such as credit-worthiness or credit history

### INFORMATION WE DISCLOSE

We disclose the information that we have when it is necessary to provide our products and services.  We may also disclose information when the law requires or permits us to do so.

### CONFIDENTIALITY AND SECURITY

Only our employees and others who need the information to service your account have access to your personal information.  We have measures in place to secure our paper files and computer systems.

### RIGHT TO ACCESS OR CORRECT YOUR PERSONAL INFORMATION

**You have a right to request access to or correction of your personal information that is in our possession.**

### CONTACTING US

If you have any questions about this privacy notice or would like to learn more about how we protect your privacy, please contact the agent or broker who handled this insurance.  We can provide a more detailed statement of our privacy practices upon request.

06/03
LSW1135B

## CANCELLATION CLAUSE

NOTWITHSTANDING anything contained in this Insurance to the contrary this Insurance may be cancelled by the Assured at any time by written notice or by surrendering of this Contract of Insurance. This Insurance may also be cancelled by or on behalf of the Underwriters by delivering to the Assured or by mailing to the Assured, by registered, certified or other first class mail, at the Assured's address as shown in this Insurance, written notice stating when, not less than 10 days thereafter, the cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and this Insurance shall terminate at the date and hour specified in such notice.

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the Earned Premium hereon or the customary short rate proportion of any Minimum Premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the Earned Premium hereon or the pro rata proportion of any Minimum Premium stipulated herein whichever is the greater.

Payment or tender of any Unearned Premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

20/4/61
NMA1331

U.S.A. & CANADA

LAND, WATER AND AIR EXCLUSION

Notwithstanding any provision to the contrary with in the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure land (including but not limited to land on which the insured property is located), water or air, howsoever and wherever occurring, or any interest or right therein.

SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure:

(a) any loss, damage, cost or expense, or

(b) any increase in insured loss, damage, cost or expense, or

(c) any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation),

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this Endorsement includes (but is not limited to):

(a) seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

(b) the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

DEBRIS REMOVAL ENDORSEMENT

THIS ENDORSEMENT CONTAINS PROVISIONS WHICH MAY LIMIT OR PREVENT RECOVERY UNDER THIS POLICY FOR LOSS WHERE COSTS OR EXPENSES FOR DEBRIS REMOVAL ARE INCURRED.

Nothing contained in this Endorsement shall override any Seepage and/or Pollution and/or Contamination Exclusion or any Radioactive Contamination Exclusion or any other Exclusion applicable to this Policy.

Any provision within this Policy (or within any other Endorsement which forms part of this Policy) which insures debris removal is cancelled and replaced by the following:

1.  In the event of direct physical damage to or destruction of property, for which Underwriters hereon agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay (hereinafter referred to as "Damage or Destruction"), this Policy also insures, within the Sum Insured, subject to the limitations and method of calculation below, and to all the other terms and conditions of the Policy, costs or expenses;

    (a) which are reasonably and necessarily incurred by the Assured in the removal, from the premises of the Assured at which the Damage or Destruction occurred, of debris which results from the Damage or Destruction; and

    (b) of which the Assured becomes aware and advises the amount thereof to Underwriters hereon within one year of the commencement of such Damage or Destruction.

2.  In calculating the amount, if any, payable under this Policy for loss where costs or expenses for removal of debris are incurred by the Assured (subject to the limitations in paragraph 1 above):

    (a) the maximum amount of such costs or expenses that can be included in the method of calculation set out in (b) below shall be the greater of US$25,000 (twenty-five thousand dollars) or 10% (ten percent) of the amount of the Damage or Destruction from which such costs or expenses result; and

    (b) the amount of such costs or expenses as limited in (a) above shall be added to:

        (i)  the amount of the Damage or Destruction; and

        (ii) all other amounts of loss, which arise as a result of the same occurrence, and for which Underwriters hereon also agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay; and

        the resulting sum shall be the amount to which any deductible or underlying amount to which this Policy is subject and the limit (or applicable sub-limit) of this Policy, shall be applied.

24/11/88
NMA2340

## ELECTRONIC DATE RECOGNITION EXCLUSION (EDRE)

This Policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

(a) the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not; or

(b) any change, alteration, or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not.

This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

17/12/97
NMA2802

## TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01
NMA2920

## BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

06/02/03
NMA2962

Sanction Limitation and Exclusion Clause

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100
15 September 2010

EXHIBIT B

# SLOANE AND WALSH LLP

### Attorneys at Law

Three Center Plaza, 8th Floor
Boston, Massachusetts 02108
Telephone (617) 523-6010
Fax: (617) 227-0927
www.sloanewalsh.com

Christopher M. Reilly
E-Mail: creilly@sloanewalsh.com

Boston, Massachusetts
Lincoln, Rhode Island
Bedford, New Hampshire
Vernon, Connecticut

November 13, 2018

## VIA CERTIFIED MAIL AND EMAIL (thomas.gasho@mclarens.com)

Thomas Gasho
McLarens
95 Glastonbury Blvd., Suite 103
Glastonbury, CT 06033

RE: **DEMAND FOR APPRAISAL**

| | |
|---|---|
| Our Client: | High Yield REO, LLC |
| Loss Location: | 108 East Lake Street, Winstead, CT 06908 |
| Claim Number: | JSH 18070581 |
| Our File No.: | Pending |

Dear Mr. Gasho:

Please be advised that this office has been retained to represent the interest of High Yield REO, LLC, with respect to the above captioned loss. Kindly direct all future correspondence to our attention.

There has been a failure to agree on the amount of Coverage A loss under the Policy. Specifically, High Yield has, for several months, apprised you of its position with respect to the value of the claim and to date you have not agreed with that stated valuation. Accordingly, pursuant to the terms of the Policy and the relevant statute, High Yield demands appraisal and nominates Steve Reardon, 51 Balcom Street, Mansfield, MA 02048 as its appraiser. Kindly notify me of your selection of an appraiser within twenty days of the date of this letter as required by the Policy and statute so that this matter can proceed to appraisal.

Very truly yours,

Christopher M. Reilly

cc: Steve Reardon

1

1273403.1

# EXHIBIT C

1578133.1

Hartford Branch

95 Glastonbury Blvd., Suite 103
Glastonbury, CT 06033 USA

Tel    +1 860.986.6878          www.mclarens.com
Fax    +1 860.392.3638



November 20, 2018

High Yield
C/O Donald Rossini
195 Main Street, Suite 3
Franklin, MA 02038

| Re: | Insured | : | High Yield |
|-----|---------|---|------------|
| | Date of Loss | : | April 20 & April 27, 2018 |
| | Cause of Loss | : | Theft |
| | Loss Location | : | 108 East Lake Street, Winsted CT 06098 |
| | Policy Number | : | ATR/R/455483.01 |
| | McLarens Files | : | 015.017599.00 & 015.017602.00 |

To Whom It May Concern:

As you are aware, we are the Independent Adjusting Firm handling this claim.

Please be aware that we have received and reviewed a report from Thomas Olam, President of Watsky Associates which has led us to conclude that the water damage to the interior of the Building is as a result of multiple areas on the roof that have failed.

In addition, our Building Consultant Edward Sandor of J.S. Held, LLC has reviewed information and documentation provided by the Insured with regards to their utilities and has determined that it is probable that the pipes which were stolen on April 20 and April 27 had no water in them at that time.

Furthermore, during our most recent inspection it became evident that the repairs the Insured began last year after sprinkler pipes burst throughout the Insured risk had not been completed at the time as there was unfinished piping leading to a newly installed sprinkler head. This would also lead us to believe that the water was not turned back on at this property after the sprinklers burst last year.

At this time we are offering to settle these matters for the $25,000.00 per-limit occurrence for the Theft damage that occurred on both April 20, and April 27. This per-limit occurrence would apply to each of the dates on which the criminals were found to be stealing pipes from the Insured Risk, for a total of $50,000.00. Depreciation would be applied to the actual cost of construction and would not be taken off the $50,000.00 limit. As such, the $50,000.00 limit would only be subject to the application of the Insureds deductible for each occurrence.

If you have any questions or concerns currently, please contact the undersigned.

Thank you for your time.

Very truly yours,

High Yield
November 20, 2018
McLarens File  015.017599.00 – 015.017602.00

**Thomas Gasho | Norcross**
Senior Adjuster
Thomas Gasho@norcross.com
95 Glastonbury Blvd., Ste 103
Glastonbury, CT 06033
+1 860.543.2589 | mobile
+1 206.363.2332 | Efax
www.norcross.com

EXHIBIT D

1578133,1

# MORRISON MAHONEY LLP

COUNSELLORS AT LAW

William A. Schneider, Partner
Phone: 617-439-7573
Fax:    617-342-4951
wschneider@morrisonmahoney.com

250 SUMMER STREET
BOSTON, MA 02210-1181
617-439-7500

MASSACHUSETTS
BOSTON
FALL RIVER
SPRINGFIELD
WORCESTER

CONNECTICUT
HARTFORD
STAMFORD

ENGLAND
LONDON

NEW HAMPSHIRE
MANCHESTER

NEW JERSEY
PARSIPPANY

NEW YORK
NEW YORK

RHODE ISLAND
PROVIDENCE

July 16, 2019

*VIA E-MAIL: creilly@sloanewalsh.com*
*And First Class Mail*

Christopher M. Reilly, Esq.
Sloane and Walsh LLP
One Center Plaza
Boston, MA  02108

Re:    Insured:          High Yield REO, LLC
       Policy No.:        ATR/R/455483.01
       Claim No.:         CMS #29483
       Our File No.:      10077288

Dear Mr. Reilly:

We write on behalf of Certain Interested Underwriters at Lloyd's, London Subscribing to Certificate No. ATR/R/455483.01 ("Underwriters"), in connection with the matter referenced above.  As you know, Underwriters proceeded with its investigation subject to a reservation of rights.  That investigation has now concluded, and Underwriters has instructed us to inform you, as counsel to the insured, High Yield REO, LLC that, based upon all available information, Underwriters will confirm coverage for the reported damage from two occurrences of theft and or attempted theft.  The investigation has not confirmed coverage for any other damages reported from vandalism or water.  Below please find a more detailed basis for this decision.

The losses in question involve the theft of copper piping and electrical wiring from the vacant premises at 108 East Lake Street, Winstead, Connecticut, on April 20, 2018, and April 27, 2018.  The insured also claimed that water damage occurred to the property as a result of the removal of water-containing pipes which resulted in interior water damage.  However, the available information does not support this claim.  Rather, the water damage to the building's interior existed and was likely the result of not just this theft occurrence, but rather the combination of: 1) this event; 2) a pre-existing and ongoing

MORRISON MAHONEY LLP

Christopher M. Reilly, Esq.
**Sloane and Walsh LLP**
July 16, 2019
Page 2

leaking roof; and 3) a prior sprinkler pipe freeze/burst where the damage was never adequately repaired.

An initial inspection of the premises occurred on May 9, 2018. Present at this meeting was Thomas Gasho of McLarens, and Donald Rossini of Gentili & Rossini Associates. During this inspection, Mr. Gasho observed extensive water damage throughout the building along with microbial growth (suspected to be mold) in certain areas. He also noticed the removal of lower wall sections ("flood cuts") in the area of the building where the majority of the water damage was observed. The flood cuts were located in close proximity to a large hole in the ceiling of a centrally located room. Mr. Rossini advised that within the last year, the building had sustained interior water damage resulting from frozen sprinkler pipes that burst throughout the premises. He advised that both building repairs and mold remediation were performed in connection with this occurrence. However, Anthony Borghi did not recall specific details other than the loss involved water damage to interior finishes as well as the growth and proliferation of mold. Endeavor hired Alliance Restoration to respond to the situation. Mr. Borghi had no specific details concerning exactly what the contractor did; however, he understood that Eric Catalozzi from Alliance Restoration located and tarped the roof leaks and also performed mold remediation.

As you know, during our investigation of this claim, Underwriters retained the services of a Building Consultant. Mr. Edward Sandor of J.S. Held. On July 23, 2018 Mr. Sandor met with Messrs. Gasho and Rossini at the loss location. During this inspection, Mr. Sandor observed that the underside of the roofing throughout the interior of the risk showed signs of significant corrosion. Following his inspection, Mr. Sandor expressed that the areas which sustained the most notable water damage, such as the basement, had likely sustained water damage on numerous occasions from water which infiltrated through the roof over a prolonged period of time.

It was subsequently determined that a roof inspection would be necessary. Mr. Thomas Olam, President of Watsky Associates, was retained to inspect the roof system. Accompanying this inspection would be Mr. Sandor and Mr. Gasho. On August 9, 2018 Mr. Olam met with Mr. Sandor, Mr. Gasho and Mr. Rossini at the loss location. The primary focus of the inspection was to evaluate the roof system which at this point was suspected as contributing factor to the water-damaged condition of the building's interior.

MORRISON MAHONEY LLP

Christopher M. Reilly, Esq.
Sloane and Walsh LLP
July 16, 2019
Page 3

During this inspection Mr. Olam discovered missing shingles, rotting plywood roof decking, and rusted nails on the shingled sections of the roof. Mr. Olam also noted that the flat EPDM sections of the roof were aged, poorly maintained and abused. Mr. Olam believes based on manufacturer's embossing that the EPDM roofing was likely 27 years old at the time of his inspection. Mr. Olam further found that the wooden mansard structure is severely rotted due to age, wear and tear and likely design flaws which provided inadequate ventilation. This observable condition was one of advanced deterioration. Mr. Olam reported that the EPDM roofing is leaking in three locations: 1) in the main east-west corridor that occurs under a failed expansion joint. His report indicates that the EPDM roof flashing separated from the galvanized steel expansion joint flange when the flange rusted; 2) at the west end of the east-west corridor where either the roof drain, or the HVAC drain line, is leaking; and 3) at the North-South corridor where an old roof patch had failed.

Mr. Borghi was unfamiliar with the extent of the damage or the location of the roof leaks. To this end, we showed him a schematic of the roof prepared by Watsky Associates, Inc. that identified the locations of holes in the roof and leaks. He was unfamiliar with the roof schematic and overall condition of the roof, including holes and leaks. He has never been up on the roof. In fact, he did not recall ever visiting the property.

Based on Mr. Borghi's testimony it appears that the insured has no knowledge or information concerning exactly what transpired in the building. We were not furnished with copies of any police incident reports or other investigative materials directly by the insured. Remarkably, Mr. Borghi does not know when or how anyone gained access to the building, or precisely what was done beyond the theft and attempted theft of copper pipe and wiring in the building. The insured also has no specific information about what portions of the building were allegedly vandalized or what portions of the building were damaged from theft or attempted theft. Any matters of or concerning the perils or number of occurrences were ascertained and presented by the public adjuster on behalf of the insured.

To this end, Alliance Restoration, in conjunction with the public adjuster, evaluated the building damage. The insured received an estimate from Alliance Restoration for water mitigation and demolition in the amount of $90,129.73. Campo Electric was brought in by Alliance Restoration and submitted an estimate for $112,000.00 to perform electrical repairs. Separately, the public adjuster prepared a 53–page estimate of loss. The public adjuster estimated damage from theft in the amount of $265,810.91. Damage from vandalism was estimated at $120,054.15. Water damage was estimated in the amount

MORRISON MAHONEY LLP

Christopher M. Reilly, Esq.
**Sloane and Walsh LLP**
July 16, 2019
Page 4

of $241,037.22.  Mr. Borghi could not state what criteria the public adjuster applied to segregate the various damages by peril.

Certain Underwriters at Lloyd's, London, issued insurance Certificate No. ATR/R/5455483.01, effective for the policy period April 13, 2018, to October 13, 2018, to High Yield REO, LLC as named insured.  This policy affords coverage for the insured location at 108 East Lake Street, Winsted, Connecticut with a building limit of $1,500,000.00, subject to an all perils deductible (excluding wind and hail) of $2,500.00, and a Coverage A theft deductible of $2,500.00 per occurrence. The policy provides for valuated on an actual cash value basis. We note that, by statute, actual cash value in Connecticut is determined based on replacement costs less depreciation.[1]

The relevant terms of coverage state, in part, as follows:

## DWELLING PROPERTY 3 - SPECIAL FORM

### AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

\* \* \* \*

### COVERAGES

This insurance applies to the Described Location, Coverages for which a Limit of Liability is shown and Perils Insured Against for which a Premium is stated.

A.   Coverage A — Dwelling

    1.   We cover:

---

[1] Section 38a-307 provides that "[t]he actual cash value at the time of loss for a building described herein shall be the amount which it would cost to repair or replace such building with material of like kind and quality, minus reasonable depreciation." As used herein, "depreciation" means a decrease in value of real property over a period of time due to wear and tear.

MORRISON MAHONEY LLP

Christopher M. Reilly, Esq.
Sloane and Walsh LLP
July 16, 2019
Page 5

        a.    The dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes, including structures attached to the dwelling;

        b.    Materials and supplies located on or next to the Described Location used to construct, alter or repair the dwelling or other structures on the Described Location; and

        c.    If not otherwise covered in this policy, building equipment and outdoor equipment used for the service of and located on the Described Location.

    2.    We do not cover land, including land on which the dwelling is located.

* * * *

## PERILS INSURED AGAINST

A.    Coverage A — Dwelling And Coverage B — Other Structures

    1.    We insure against risk of direct physical loss to property described in Coverages A and B.

    2.    We do not insure, however, for loss:

        a.    Excluded under General Exclusions;

        b.    Involving collapse, except as provided in Other Coverage 10. Collapse; or

        c.    Caused by:

* * * *

            (6)    Vandalism and malicious mischief, theft or attempted theft, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious

MORRISON MAHONEY LLP

Christopher M. Reilly, Esq.
Sloane and Walsh LLP
July 16, 2019
Page 6

mischief, theft or attempted theft, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

(7)     Constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

(8)     Any of the following:

(a)     Wear and tear, marring, deterioration;

* * * *

(f)     Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings; or

* * * *

Exception To c.(8)

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a:

MORRISON MAHONEY LLP

Christopher M. Reilly, Esq.
Sloane and Walsh LLP
July 16, 2019
Page 7

    (i)    Storm drain, or water, steam or sewer pipe, off the Described Location; or

    (ii)    Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the Described Location. This includes the cost to tear out and replace any part of a building, or other structure, on the Described Location, but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the Described Location.

We do not cover loss to the system or appliance from which this water or steam escaped.

For the purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or roof drain, gutter, down spout or similar fixtures or equipment.

General Exclusion **A.3.** Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of ground do not apply to loss by water covered under **c.(8)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

\* \* \* \*

## GENERAL EXCLUSIONS

A.    We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These

MORRISON MAHONEY LLP

Christopher M. Reilly, Esq.
Sloane and Walsh LLP
July 16, 2019
Page 8

exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\* \* \* \*

3.   **Water Damage**

Water Damage means:

a.   Flood, surface water, waves, tidal water, overflow of a body of water or spray from any of these, whether or not driven by wind;

\* \* \* \*

caused by or resulting from human or animal forces or any act of nature.

\* \* \* \*

5.   **Neglect**

Neglect means your neglect to use all reasonable means to save and preserve property at and after the time of a loss.

\* \* \* \*

B.   We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

\* \* \* \*

3.   Faulty, inadequate or defective:

a.   Planning, zoning, development, surveying, siting; Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

MORRISON MAHONEY LLP

Christopher M. Reilly, Esq.
**Sloane and Walsh LLP**
July 16, 2019
Page 9

          b.     Materials used in repair, construction, renovation or remodeling; or

          d.     Maintenance;

          of part or all of any property whether on or off the Described Location.

*  *  *  *

## MOLD AND FUNGI EXCLUSION CLAUSE

Notwithstanding any other provision of this policy, there is no coverage for any loss or damage involving in any way the actual or potential presence of mold, mildew or fungi of any kind whatsoever, whether or not directly or indirectly caused by or resulting from an Insured Peril.

*  *  *  *

## VANDALISM OR MALICIOUS MISCHIEF ENDORSEMENT — DWELLING PROPERTY (SPECIAL)

In consideration of the premium charged, it is understood and agreed that coverage is afforded hereunder for direct physical loss or damage caused by Vandalism or Malicious Mischief which is defined to mean willful and malicious damage to insured building(s).

This coverage is subject to the following additional condition:

- Any physical loss or damage caused by Vandalism or Malicious Mischief must be reported to Underwriters within ten (10) days after the Insured first learns of the loss or damage.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

*  *  *  *

MORRISON MAHONEY LLP

Christopher M. Reilly, Esq.
Sloane and Walsh LLP
July 16, 2019
Page 10

<u>SPRINKLER LEAKAGE EXCLUSION</u>
(VACANT DWELLING PROPERTY — SPECIAL)

In consideration of the premium charged, it is understood and agreed that section A.2.c.(1), PERILS INSURED AGAINST, of policy form DP 00 03 12 02 is amended to exclude coverage for physical loss or damage directly or indirectly caused by any release of water or any other substance from any automatic fire protective sprinkler system at the insured building(s).

\* \* \* \*

<u>Pre-Existing Damage Exclusion</u>

DWELLING PROPERTY

The following is added to the **GENERAL EXCLUSIONS**:

We do not insure for loss caused directly or indirectly by any of the following:

a)   Any damage which occurred prior to policy inception regardless of whether such damage were apparent at the time of the inception of this policy or at a later date; or

b)   Any claims or damages arising out of workmanship, repairs and/or lack of repairs arising from damage which occurred prior to policy inception.

Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

\* \* \* \*

<u>Theft Amendatory Endorsement</u>
<u>(Coverage A — Dwelling)</u>

This endorsement modifies insurance provided under Coverage A - Dwelling:

Theft Sublimit: <u>$25,000</u>

MORRISON MAHONEY LLP

Christopher M. Reilly, Esq.
Sloane and Walsh LLP
July 16, 2019
Page 11

> The sublimit shown above is the most we will pay for direct physical loss
> caused by or resulting from theft or attempted theft.
>
> This limitation does not apply to:
>
> 1.   Loss or damage that occurs due to looting at the time and place of a
>      riot or civil commotion; or
>
> 2.   Damage to Building caused by breaking in to or exiting from the
>      Building.
>
> ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN
> UNCHANGED.

* * * *

No facts or evidence support the public adjuster's assertion that the loss involves vandalism damage, or that any water damage occurred at the property as a result of the thefts in question, including any theft of piping associated with the fire sprinkler system. Past lost history at the site, together with the forensic engineering investigation performed by Watsky Associates, establishes that the water damage to the building's interior did not result exclusively from theft, but rather from pre-existing and ongoing roof leaks, and a prior sprinkler pipe freeze-up loss in 2018. The insured has proffered no information, whether in the form of testimony or documents, to refute the adjuster's observation that the majority of the visible water damage resulted from factors other than theft.

However, whether the water damage resulted from theft, attempted theft or vandalism, is a distinction without a difference. Per the Sprinkler Leakage Exclusion, coverage does not apply to "physical loss or damage directly or indirectly caused by any release of water or any other substance from any automatic fire protective sprinkler system at the insured building(s)." Any argument the water damage resulted from theft or attempted theft does not defeat the exclusion because it contains anti-concurrent causation wording, i.e., "directly or indirectly cause . . . ."

The insured's reliance on *Mercedes Zee Corp., LLC v. Seneca Ins. Co., Inc.*, 151 F.Supp.3d 255 (D. Conn. 2017), is misplaced. Unlike the policy provision at issue in *Mercedes Zee*, the provision here expressly excludes coverage for attempted theft. At issue in Mercedes Zee was the provision contained in the Cases of Loss – Basic Form, which provided, coverage for "[v]andalism, meaning willful and malicious damage to, or

MORRISON MAHONEY LLP

Christopher M. Reilly, Esq.
**Sloane and Walsh LLP**
July 16, 2019
Page 12

destruction of, the described property," but excluded coverage "for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars." To be certain, the policy here excludes loss or damage by theft in the first instance per the DP3. However, the Theft Amendatory Endorsement provides that the sublimit of $25,000.00 "is the most we will pay for direct physical loss caused by or resulting from theft or attempted theft." While this endorsement does not extend to damage to the building caused by breaking into or exiting from the building, the insured, to our knowledge, has not presented any damages for those amounts.

The public adjuster estimated loss or damage from theft in the amount of $265,810.91. Beyond the application of the sublimit applicable to each reported theft occurrence, there is no coverage for the amount claimed. Similarly, because the policy sublimit applies to both theft and attempted theft, the same sublimit governs the insured's claim for vandalism damage in the amount of $120,054.15. This leaves only the $241,037.22 claimed for water damage.

Neither the insured nor its representatives made any effort to separate the pre-existing and unrelated damage caused by roof leaks and the sprinkler system first from any water damage from theft. However, coverage should not apply to any water damage being claims. *First*, to the extent any water damage resulted from theft or attempted theft the insured is limited in its recovery to $25,000 per occurrence. *Second*, if the water came from the sprinkler it is excluded. *Third*, if the water damage pre-dated the inception of coverage, the Pre-Existing Damage Exclusion provides that coverage will not apply to any damage which occurred prior to policy inception regardless of whether such damage were apparent at the time of the inception of this policy or at a later date, or any claims or damages arising out of workmanship, repairs and/or lack of repairs arising from damage which occurred prior to policy inception. *Fourth*, rain water that collects on the roof is surface water within the meaning of the Water Damage exclusion. *Fifth*, coverage does not apply to neglect or defective workmanship or maintenance.

For the reasons started above, Underwriters will only confirm coverage for two incidents of theft and or attempted theft, each subject to a $25,000 sublimit. Underwriters has based its coverage determination on the result of its investigation and all information provided to it to date. In the event that you disagree with this position or have further information you believe might influence its decisions bearing on coverage, we invite its prompt written submission. However, any further investigation, adjustment and evaluation of this loss by Underwriters is made subject to a complete reservation of its rights, including the right to alter or amend its coverage determination upon the receipt of further material information. Also, if you do not agree with Underwriters' decisions, you

MORRISON MAHONEY LLP

Christopher M. Reilly, Esq.
Sloane and Walsh LLP
July 16, 2019
Page 13

may contact the Division of Consumer Affairs within the Insurance Department at P.O. Box 816, Hartford CT, 06142-0816; telephone number 860-297-3900; toll free number 1-800-203-3447; website *www.ct.gov/cid.*

All rights are reserved. Nothing contained in this correspondence shall be construed as a waiver or relinquishment by Underwriters of rights under the terms and provisions of its insurance policies or at law. Any past or continued conduct on the part of Underwriters or its representatives in investigating the claim is not intended to be, and shall not operate in any as a waiver or invalidation of any of the requirements, conditions, provisions or terms of the referenced policy. Additionally, such actions are not intended to and will not operate to waive any rights Underwriters may have under any policy to ascertain the existence and/or the extent of coverage because of violations of any policy provisions or the applicability of any policy provisions. Underwriters specifically reserves the right to disclaim coverage and deny liability under the Underwriters policy for any other reason, whether or not now known.

We are, of course, available to discuss this matter with you. If you have any questions, please feel free to telephone.

Sincerely,

MORRISON MAHONEY LLP

William A. Schneider

WAS/mr

EXHIBIT E

# SLOANE and WALSH LLP

Attorneys at Law

One Center Plaza, 8th Floor
Boston, Massachusetts 02108
Telephone (617) 523-6010
Fax: (617) 227-0927
www.sloanewalsh.com

Christopher M. Reilly
E-Mail: creilly@sloanewalsh.com

Boston, Massachusetts
Lincoln, Rhode Island
Bedford, New Hampshire
Glastonbury, Connecticut

August 21, 2019

**VIA REGULAR MAIL AND EMAIL**
William A. Schneider
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210-1181

RE:     Our Client:        High Yield REO, LLC
        Claim Number:      JSH 18070581
        Loss Location:     108 East Lake Street, Winstead, CT 06908
        Policy Number:     ATR/R/455483.01
        Our File No.:      PE000-1394

Dear Mr. Schneider,

I write today on behalf of High Yield REO, LLC in response to your July 16, 2019 denial letter ("Denial Letter") sent on behalf of Certain Interested Underwriters at Lloyd's, London. As outlined below the Denial Letter misstates facts upon which it bases its coverage denial, misapplies policy language to the facts of this case, ignores established Connecticut law, and wrongly denies coverage for covered losses.

High Yield hereby demands that Lloyd's withdraw its partial denial and afford coverage in its entirety for the claimed loss. If Lloyd's fails to do so within 14 days, High Yield will file suit seeking breach of contract and bad faith damages.

## I.    THE DENIAL LETTER MISSTATES FACTS RELATED TO THIS LOSS.

High Yield took possession of the insured property prior to the inception of the policy which provides coverage for this loss, Policy number ATR/R/455483.01 ("Policy"). The building had been originally purchased by Knitto, LLC. High Yield was the secured lender with respect to Knitto's purchase of the property. High Yield obtained the property after Knitto defaulted on its obligations to High Yield and High Yield

1

1600883.1

subsequently foreclosed on the property. At the time the Policy commenced the property was vacant, and accordingly, High Yield specifically sought an insurance policy which would provide coverage for the risks associated with a vacant property.

To that end, the Policy contains many endorsements which are not part of a common commercial insurance policy and, in exchang for those endorsements, High Yield paid a significantly higher premium. By way of example, the Policy contained the following endorsements and exclusions specifically tailored to provide coverage to High Yield for this vacant property:

- DL 24 11 07 88 Premises Liability (Non-Owner occupied Dwelling)

- ATR-19 Other Structures Coverage Endorsement (Vacant Property)

- ATR-21 Vacancy Permit – Dwelling Property (Special)

- ATR-23 Vandalism of Malicious Mischief Endorsement – Dwelling Property (Special)

Lloyd's was aware of the vacant nature of the property and represented to High Yield that the Policy would provide coverage for the vacant property.

The losses for which High Yield seeks coverage occurred on or around April 20, 2018 and April 27, 2018. The losses were discovered when Vance Taylor was showing the property to a prospective buyer and discovered damage to a generator on the premises. High Yield contacted Eric Catallozi to inspect this damage. The interior of the building had been subjected to vandalism, attempted theft, and theft. Windows had been broken, doors had been broken, the generator had been cut, holes had been cut in the walls, and some copper piping had been stolen. Notably, the copper piping which was stolen was from the domestic water supply system, not the sprinkler system. This is precisely the type of loss against which High Yield sought to insure itself by buying the Policy (and paying the excess premium) to protect its vacant property. Additionally, the property had sustained covered ensuing water damage to the property as a result of the vandalism, attempted theft, and faulty workmanship.

The Denial Letter incorrectly states that Lloyd's was not provided with "any police incident reports or other investigative materials directly by the insured." Contrary to this assertion, it is my understanding that, although the police reports were not provided in High Yield's May 9, 2019 document production, they were provided at the examination under oath of Mr. Borghi which occurred on May 13, 2019. Additional copies are attached hereto as Exhibit A and Exhibit B. Second, by your use of the phrase "directly by the insured," I assume that Lloyd's is in possession of these reports, and therefore, to the extent Lloyd's attempts to suggest that its investigation has been hampered by

2

an alleged failure of High Yield to produce those police reports, that argument is without merit as presumably Lloyd's is in possession of these documents.

The April 20, 2018 and April 27, 2018 police reports (which are not addressed at all in the Denial Letter despite my expectation that they are in the possession of Lloyd's) indicated that a chain to the building, which secured the north side entry double doors, had been cut and a piece of copper piping had been wedged on the inside of the double doors to make it appear the doors were secure. Muddy footprints were throughout the building, cut copper pipes were located on the floor, and others were in a white pail. As noted above, the copper pipes were removed from the domestic water supply piping system, not the sprinkler system.

Lloyd's relies heavily on its theory that a "freeze up" loss had occurred at the property in February of 2017, that this "freeze up" involved sprinkler pipes, and that water had escaped from these frozen sprinkler pipes and "directly or indirectly caused" the damage for which High Yield seeks coverage. Specifically, the Denial Letter states that it had been reported that "within the last year, the building had sustained interior water damage resulting from frozen sprinkler pipes that burst throughout the premises." As detailed below, this ground for denial is baseless for several reasons.

At his examination under oath, Mr. Borghi denied knowledge of a "pipe freeze" in 2017, and instead explained that High Yield had a "mold issue" in the basement in 2017, which High Yield had addressed and had remediated by Alliance Restoration. This is the 2017 event to which your letter refers. There was no freeze up of pipes in the building at this time. High Yield provided the invoices associated with that remediation work, **none** of which included repair of any pipes or other repairs associated with a freeze up. It is clear that once Lloyd's heard the phrase "freeze-up" it buried its head in the sand and did not account for the litany of information it received demonstrating that no such freeze-up caused or contributed to this loss.

Given Lloyd's misstatements of fact regarding various other aspects of its investigation, it is of little surprise that it has mischaracterized the cause of loss in order to attempt to fit this claim into one of the Policy's exclusions. By way of further example, Lloyd's contention that "based on Mr. Borghi's testimony it appears that the insured has no knowledge or information concerning exactly what transpired in the building" and that "remarkably, Mr. Borghi does not know when or how anyone gained access to the building, or precisely what was done beyond the theft and attempted theft of copper pipe and wiring in the building" is disingenuous at best. First, Mr. Borghi was not asked what knowledge he had of the damage to the building, but rather was asked only what had been reported to him by Vance Taylor and Eric Catallozi, which information he readily provided to the best of his ability. Second, neither Mr. Borghi nor anyone on behalf of Lloyd's was at the building at the time of the vandalism, attempted theft, and theft, and so he could not possibly know with certainty what happened at the building. Unlike Lloyd's, he does not make assumptions of what occurred. Third, the

3

police reports, which, as discussed, are likely in Lloyd's possession, indicate that access to the building was gained by cutting a chain that guarded the building.

The misrepresentations of Mr. Borghi's testimony are pervasive throughout the Denial Letter. In addition to those noted above, Lloyd's makes many other misrepresentations which are easily disproven. The purpose of these misrepresentations is unclear, other than being an attempt by Lloyd's to simply malign its own policyholder. By way of example, the Denial Letter states that Mr. Borghi "did not recall ever visiting the property." Mr. Borghi repeatedly testified that he visited the property on more than one occasion. See EUO transcripts at pgs. 17, 29.

The loss was promptly reported to Lloyd's on or around May 3, 2018, and an initial inspection occurred on May 9, 2018. Present at the inspection were Mr. Gasho of McLarens and a representative from Gentili & Rossini Associates. Lloyd's suggests that it has a report from Mr. Gasho indicating that he was told by Gentili that a freeze up loss had occurred in 2017, although no such report has been provided to High Yield. Additionally, despite hiring three experts to inspect the property, Lloyd's has produced no photographs of the frozen sprinkler pipes which it alleges burst in 2017. Regardless, the documents and testimony provided indicate that no such sprinkler freeze-up loss occurred. This has not deterred Lloyd's from relying on this mistaken information.

The Denial Letter goes to significant lengths to detail what Lloyd's considers faulty workmanship with respect to the roof and roofing system. To be clear, High Yield is not seeking coverage for faulty workmanship. However, as detailed below, the Policy is explicit that ensuing loss as a result of such faulty workmanship is covered, and High Yield does seek such damages.

With respect to the extent of covered damage, Lloyd's falsely stated that "neither the insured nor its representatives made any effort to separate the pre-existing and unrelated damage caused by roof leaks and the sprinkler system from any water damage from theft." This is demonstrably false. Gentili & Rossini went through the building in painstaking detail to separate any uncovered pre-existing damage from the covered damage related to this claim. This was explicitly communicated to Mr. Gasho and Lloyd's, but, like so many other pieces of information related to this claim, Lloyd's has ignored it.

## II.   THE DENIAL LETTER MISAPPLIES THE POLICY LANGUAGE TO THE FACTS OF THIS CASE.

As a threshold matter, Lloyd's has failed to reserve any of its rights under the Policy for a period of over one year, and accordingly, has waived its right to deny High Yield's claim based on any of the policy language upon which it relies. Notwithstanding this waiver, for the reasons detailed below, Lloyd's coverage position relies entirely on either misstatements of fact or misapplication of law.

4

Lloyd's denial on the basis that the loss is barred by some "prior sprinkler pipe freeze-up loss in 2018 [sic]"[1] fails for several reasons. Most fundamentally, there was no prior sprinkler pipe freeze-up in 2017. Mr. Borghi specifically refuted this suggestion at his examination under oath, and the invoices associated with the repair of the mold issue that existed prior to this loss demonstrate that High Yield undertook to remediate the mold issue and that no part of that remediation included a repair of a frozen pipe — because no frozen pipe loss occurred at this time. It is clear that Lloyd's heard the word "freeze up" and then has latched onto that explanation and ignored the further clarifying information provided to it.

Second, even assuming that there was a freeze-up, but see supra, the water bills demonstrate that no water was used at the vacant property in the months prior to and during the loss. Accordingly, there could be no "release of water" from the fire protective sprinkler system as that would have resulted in a significant water usage.

Third, again assuming arguendo that there was a freeze up of the sprinkler system, and that water had been "released" from the sprinkler system, it is impossible that water from a sprinkler system could "directly or indirectly cause" the covered damage in this claim, including but not limited to, the vandalism damage, and damage to the building outside the scope of where such theoretical sprinkler release could reach. Accordingly, Lloyd's denial based on the Sprinkler Leakage Exclusion fails.

Lloyd's has improperly denied the water damage portion of the claim for several reasons. I will respond to each of Lloyd's grounds for denial below:

- First, the water damage resulting from attempted theft is not limited by the Theft endorsement for the reasons stated below.

- Second, as noted above, the water damage did not come from the sprinkler system so it is not excluded by the Sprinkler Leakage Exclusion.

- Third, as noted above, the damage detailed in the Gentili estimate did not "pre-date" the inception of coverage. This could be readily determined by Lloyd's reviewing its inspection reports for the property, which should note that none of this damage existed prior to the policy year.

- Fourth, your unsupported contention that "rain water that collects on the roof is surface water within the meaning of the Water Damage exclusion" is **directly contradicted** by Connecticut law, which has rejected that argument and referred to it as a "strained" interpretation. Union St. Furniture

---

[1]     For purposes of this letter I will assume that Lloyd's is referring to the "prior sprinkler pipe freeze-up" it incorrectly claims occurred in 2017, not 2018. If Lloyd's is now claiming a separate "sprinkler pipe freeze-up" in 2018, please let me know.

5

& Carpet, Inc. v. Peerless Indem. Ins. Co., 2012 WL 5519614, at *4 (Conn. Super. Ct. Oct. 23, 2012) ("Mindful of the well accepted rules of interpretation of insurance contracts, the court rejects the strained interpretation of surface water offered by Peerless, and concludes that the phrase 'surface water' as it occurs in the Peerless policy does not include water collected on a roof.").

- Fifth, as Lloyd's should be well aware, although there is no coverage for faulty workmanship or maintenance, the Policy **explicitly** provides coverage for an "ensuing loss" resulting from such defective workmanship. This ensuing loss provision had been specifically noted to Lloyd's, yet, like so much of this claim, it has been intentionally ignored.

For these reasons, Lloyd's denial of the water damage claim is baseless.

Lloyd's denial on the basis that Mercedes Zee Corp., LLC v. Seneca Ins. Co., Inc., 151 F. Supp. 3d 255 (2015) is distinguishable from the current matter, is likewise without basis. In Mercedes "vandalism" was defined as willful and malicious damage to, or destruction of, the described property. Here, High Yield specifically purchased an endorsement titled "Vandalism or Malicious Mischief Endorsement – Dwelling Property (Special)" which stated that "coverage is afforded hereunder for direct physical loss or damage caused by Vandalism or Malicious Mischief which is defined to mean willful and malicious damage to insured building(s).". The Policy specifically states that "Vandalism or malicious mischief" **includes** attempted theft or burglarybut excludes theft. See e.g. DP 00 03 12 02 at pg. 3 ("Vandalism or malicious mischief, including *damage during a burglary or attempted burglary, but not theft of property*) (emphasis supplied), 6 ("Vandalism or Malicious Mischief" is defined to exclude "pilferage, theft, burglary, or larceny," but does not exclude attempted theft or damage during a theft). Therefore, at a minimum, there is an ambiguity where the policy on the one hand provides coverage for "vandalism" which it specifically states includes "attempted burglary," and "damage during a burglary" and another portion of the policy purports to exclude coverage for "attempted theft." As you are no doubt aware, ambiguities in an insurance policy are to be construed in favor of the policy holder. As the Mercedes Zee court noted:

> If the terms of the policy are ambiguous, then the policy must be construed in favor of the insured. See Drown, 314 Conn. at 188, 101 A.3d 200. Similarly, an exclusion from coverage must be strictly construed in favor of the insured—that is, an exclusion "should be construed in favor of the insured unless [the court] has a high degree of certainty that the policy language clearly and unambiguously excludes the claim." Ibid.

Mercedes Zee, 151 F. Supp. 3d at 259.

6

Therefore, where, at a minimum, High Yield's interpretation of the policy – to wit that when the Policy states that "Vandalism," including "attempted burglary" and "damage during burglary," is covered, it means what it says – is reasonable. Accordingly, the Policy must be construed in High Yield's favor and coverage is owed for the attempted theft, damage during theft, and any ensuing loss related thereto.

In summary, each of the exclusions relied upon by Lloyd's to deny coverage is inapplicable on its face, and Lloyd's denial rests on either ignoring established facts, or ignoring established case law. For this reasons High Yield demands that Lloyd's rescind its coverage denial and provide coverage for this loss within 14 days of this demand. If coverage is not afforded within two weeks, we will file suit.

## III.   LLOYD'S BAD FAITH CLAIMS HANDLING.

As noted in my May 9, 2019, correspondence, which is incorporated by reference herein, prior to its issuance of the July 16, 2019 Denial Letter, Lloyd's had acted in bad faith by suggesting it had reserved its rights when it had not, failing to issue undisputed payments, failing to respond to the insured's appraisal demand, failing to issue payment where liability is clear, and failing to substantively respond to the insured's correspondence regarding its claim for additional coverage in light of Connecticut law as set forth in <u>Mercedes Zee Corp., LLC v. Seneca Ins. Co., Inc.</u>, 151 F. Supp. 3d 255 (2015). I, once again, note that Lloyd's has waived its right to challenge the insured's stated value of the loss by failing to comply with the Appraisal provision, and therefore, with respect to any future coverage litigation, the value of the loss has been established by the Gentili & Rossini estimate.

For the reasons noted above, since May 9, 2019, Lloyd's has committed further acts of bad faith, including, ignoring factual information provided to it which defeat its coverage denial position, misstating the law with respect to whether rain collected on a roof is "surface water," <u>see</u> <u>Union Street</u>, <u>supra</u>, and continuing to refuse to provide coverage where liability is reasonably clear under the policy.

## CONCLUSION

It remains my hope that this matter can amicably be resolved, but it seems less and less likely that a resolution of this matter can be avoided without litigation.

Kindly forward this correspondence to your client and then advise if Lloyd's will rescind its coverage denial and accept coverage for the loss. If Lloyd's does not do so within 14 days, High Yield will be compelled to file suit against Lloyd's for breach of contract and various other counts related to Lloyd's bad faith handling of this matter.

Thank you.

7

Very truly yours,

*/s/ Christopher M. Reilly*

_____

Christopher M. Reilly

8

1600883.1

| CIVIL TRACKING ORDER (STANDING ORDER 1-88) | DOCKET NUMBER 1984CV02924 H | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: High Yield REO LLC vs. Certain Underwriters at Lloyd's London | | Michael Joseph Donovan, Clerk of Court |
| TO: | | COURT NAME & ADDRESS Suffolk County Superior Court - Civil Suffolk County Courthouse, 12th Floor Three Pemberton Square Boston, MA 02108 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

STAGES OF LITIGATION

DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 12/16/2019 | |
| Response to the complaint filed (also see MRCP 12) | | 01/15/2020 | |
| All motions under MRCP 12, 19, and 20 | 01/15/2020 | 02/14/2020 | 03/16/2020 |
| All motions under MRCP 15 | 01/15/2020 | 02/14/2020 | 03/16/2020 |
| All discovery requests and depositions served and non-expert depositions completed | 07/13/2020 | | |
| All motions under MRCP 56 | 08/12/2020 | 09/11/2020 | |
| Final pre-trial conference held and/or firm trial date set | | | 01/11/2021 |
| Case shall be resolved and judgment shall issue by | | | 09/16/2021 |

The final pre-trial deadline is not the scheduled date of the conference. You will be notified of that date at a later time.

Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | PHONE |
|---|---|---|
| 09/17/2019 | Steven J Masse | (617)788-8147 |